[No. G020858. Fourth Dist., Div. Three. June 30, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER RAY WOODS, Defendant and Appellant.

**COUNSEL**

Susan L. Wolk, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch and Larissa Karpovics Hendren, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RYLAARSDAM, J.**—After having waived a jury trial, Christopher Ray Woods was convicted of first degree burglary. (Pen. Code, §§ 459, 460,

subd. (a); all undesignated statutory references are to the Penal Code.) Woods contends on appeal the evidence was insufficient to support the finding that the room he burgled was part of an inhabited dwelling. He also contends the judgment must be reversed because the information failed to properly identify the victim of the burglary. We find no error and affirm.

## FACTS

On July 30, 1996, police officers responded to a report of a burglary in progress at an apartment complex. The officers found defendant Woods and a female companion inside a laundry facility within the complex. One of the washing machines had been pulled from the wall and its coin box had been broken. Fresh pry marks were visible on the door to the laundry room. The apartment manager told police he had locked the laundry room an hour before and at that time nothing in the room had been disturbed. The manager further reported that neither Woods nor his companion lived in the complex.

The complex is a two-story, U-shaped building with an open-air courtyard in the middle. Entry into all the individual apartments is via the courtyard. Unlocked, wrought iron gate entrances stand on three sides of the complex. The laundry room is on the ground floor in a corner of the complex. Occupied apartments are immediately above and adjacent to the laundry room, which is also entered from the courtyard. The entire building, including the laundry room, is covered by a single roof.

## DISCUSSION

1. *Was It First Degree Burglary?*

■ Woods does not dispute he burglarized the laundry facility within the apartment complex. Instead, he challenges the court's finding as to the degree of that burglary. First degree burglary is: "Every burglary of an inhabited dwelling house; . . . [¶] . . . [a]ll other kinds of burglary are of the second degree." (§ 460.) Woods argues the evidence does not support a first degree burglary conviction because a "commercial laundry facility" within the common area of an apartment complex does not constitute an inhabited dwelling house.

■ "[C]ourts have explained that the term 'inhabited dwelling house' means a 'structure where people ordinarily live and which is currently being used for dwelling purposes. [Citation.]'" (*People v. Cruz* (1996) 13 Cal.4th 764, 776 [55 Cal.Rptr.2d 117, 919 P.2d 731].) The burglary statute defines "inhabited" as "currently being used for dwelling purposes, whether occupied or not." (§ 459.) Case law has expanded the definition of "inhabited

dwelling house" to include areas not normally considered part of the "living space" of a home. For example, in *People* v. *Moreno* (1984) 158 Cal.App.3d 109 [204 Cal.Rptr. 17], the court affirmed a first degree burglary conviction based on the defendant's entry into a garage that was attached to the house and under the same roof but was accessible only through an exterior entrance. Despite the lack of a connecting door between the garage and the interior of the house, the court concluded the garage was part of an inhabited dwelling because it "was under the same roof, functionally interconnected with, and immediately contiguous to other portions of the house . . . ." (*Id.* at p. 112; see also *People* v. *Coutu* (1985) 171 Cal.App.3d 192, 193 [217 Cal.Rptr. 191] [defendant's entry into a storeroom that was connected to a house by a roofed breezeway constituted first degree burglary]; *People* v. *Ingram* (1995) 40 Cal.App.4th 1397, 1404 [48 Cal.Rptr.2d 256] ["The proper focus is whether the attached structure is an integral part of a dwelling, that is, functionally interconnected with and immediately contiguous to other portions of the house."])

*People* v. *Zelaya* (1987) 194 Cal.App.3d 73 [239 Cal.Rptr. 289] presents a factual scenario closely akin to the matter before us. In *People* v. *Zelaya* the defendant was convicted of first degree burglary for having climbed through a damaged vent to enter the common garage and basement storage areas of an apartment building. As in the present case, the defendant in *Zelaya* argued the burglary he committed was not of an inhabited dwelling. The court rejected the argument, concluding that the garage and storage rooms Zelaya entered "were functionally connected with, and an integral part of, the building's living quarters, and were therefore part of an 'inhabited dwelling house' within the meaning of Penal Code section 460." (*Id.* at pp. 75-76.)

*People* v. *Zelaya* is not entirely apposite because the storage rooms in issue in that case were used by the tenants to store their personal belongings. Such rooms fall more clearly within the traditional notion of a dwelling house—a place where mementos and other personal items are kept and thus a space deserving of special protection. As the court observed in *People* v. *DeRouen* (1995) 38 Cal.App.4th 86 [44 Cal.Rptr.2d 842], " '[A] burglary of an inhabited dwelling involves an invasion of perhaps the most secret zone of privacy, the place where trinkets, momentos, heirlooms, and the other stuff of personal history are kept. Society therefore has an important interest in seeing to it that burglars stay out of inhabited dwelling houses.' [Citation.]" (*Id.* at p. 91.) There is no evidence the laundry room at issue in the present case was used by tenants to store personal property.

Moreover, Woods argues the laundry room fails the objective test for an inhabited dwelling applied in the cases cited above. (See, e.g., *People*

v. *Moreno, supra,* 158 Cal.App.3d at p. 112; *People* v. *Ingram, supra,* 40 Cal.App.4th at p. 1404, *People* v. *Zelaya, supra,* 194 Cal.App.3d at pp. 75-76.) Woods does not dispute the laundry room is "under the same roof" and "immediately contiguous to" occupied apartments above and below. Rather, he contends the laundry room is not "an integral part" of any of the individual dwelling units in the complex and thus is itself not an inhabited dwelling.

Woods fails to cite any authority for his contention that the laundry room must be an integral part of an *individual apartment unit* as opposed to an integral part of the *complex* in order to constitute an inhabited dwelling. *People* v. *Zelaya, supra,* 194 Cal.App.3d 73, of course, holds to the contrary. In that case, the court upheld a first degree burglary conviction based on its finding that the burglarized garage and storage rooms were "an integral part of . . . the *building's* living quarters[.]" (*Id.* at pp. 75-76, italics added.) Similarly, in the present case, the relationship of the laundry room to the complex itself is the proper focus of inquiry. Based on the evidence of the physical placement of the laundry room within the complex and the fact it was used by tenants to do their laundry, a household chore, we find no error in the court's implied finding this room was an integral part of the complex, and thus an inhabited dwelling.

Woods further suggests the laundry room fails the alternative "reasonable expectation test" for an inhabited dwelling. In *People* v. *Brown* (1992) 6 Cal.App.4th 1489 [8 Cal.Rptr.2d 513] the court explained this test and its underlying rationale. "Since one of the purposes of the burglary statute is to protect against unauthorized entry and the attendant danger that the occupant will react violently to the intrusion, the reasonable expectation test focuses on the protection the inhabitants of a structure reasonably expect. [Citations.] In situations implicating this particular purpose, the proper question is whether *the nature of a structure's composition* is such that a reasonable person would expect some protection from unauthorized intrusions." (*People* v. *Brown, supra,* 6 Cal.App.4th at p. 1496, citing *People* v. *Nible* (1988) 200 Cal.App.3d 838, 844 [247 Cal.Rptr. 396].) Since the apartment building here was not a "security-type" complex, and because each tenant had access to the laundry room, Woods asserts tenants had no expectation of privacy or increased security when inside the room. In fact, Woods asserts "[a] tenant would *expect* strangers in that facility."

Of course, Woods ignores the fact that the "strangers" a tenant would expect to meet in the laundry room were fellow tenants doing laundry, not burglars. The evidence established the room was usually kept locked so that only tenants were permitted access to it. This evidence is sufficient to

support a finding, under the reasonable expectation test, that the laundry room is an area where tenants would expect protection from unauthorized intrusions, and thus it qualifies as an inhabited dwelling.

Finally, Woods argues the "philosophical rationale supporting the distinction between first and second degree burglary" leads to the conclusion the burglary he committed was only of the second degree. In support of his argument, Woods cites a discussion in *People* v. *Cruz, supra*, 13 Cal.4th 764, which explains that the law recognizes residential burglary as a more serious offense because of society's interest in protecting "the peaceful occupation of one's residence." (*Id.* at p. 775.) Specifically, the court states the occupied dwelling receives "heightened protection under our statutes in order to avoid the increased danger of personal violence attendant upon an entry into a 'building currently used as sleeping and living quarters.' [Citation.] . . . '[A] person is more likely to react violently to burglary of his living quarters than to burglary of other places because in the former case persons close to him are more likely to be present, because the property threatened is more likely to belong to him, and because the home is usually regarded as a particularly private sanctuary, even as an extension of the person.' [Citation.]" (*Ibid.*)

We cannot agree with Woods that the policy interests underlying the offense of residential burglary, as described by the court in *People* v. *Cruz*, are not implicated by his crime. As we explained, the residents of the apartment complex at issue could reasonably expect to be safe from unauthorized intrusion in the laundry room. Though tenants may not have "stored" personal belongings in the laundry room, clothes being washed in the machines would certainly be personal property at risk in a burglary of the room. We conclude the safety and privacy expectations surrounding an inhabited dwelling house are present in the common area laundry room of the apartment complex Woods burgled here. The evidence supports his first degree burglary conviction.

### 2. *The Information's Failure to Identify the Burglary Victim*

■ As a separate ground for reversal, Woods argues the information is fatally flawed because it does not properly identify the victim of the burglary. The information specifies that the inhabited dwelling house Woods entered with the intent to commit larceny was "inhabited by Gazi Kahn." Gazi Kahn is the manager of the apartment complex who summoned police after noticing suspicious activity in the laundry room. Kahn is not the owner of the building or of the washing machine that was damaged in the burglary.

Woods contends the "name or names of owners of the property which the defendant sought to seize constitutes an element of the offense [of burglary]"

and thus must be specifically pleaded in the information. Woods argues *People* v. *DeRouen*, *supra*, 38 Cal.App.4th at pages 92-93 implicitly holds that ". . . a defendant is entitled to notice of the correct name of the burglary victim." Since the information here failed to provide him with notice of his victim's name, Woods asserts the judgment must be reversed.

This argument fails for two reasons. First, Woods waived any objection to the sufficiency of the information by failing to demur on the ground the charging allegation was not sufficiently definite. (*People* v. *Holt* (1997) 15 Cal.4th 619, 672 [63 Cal.Rptr.2d 782, 937 P.2d 213].) Second, Woods has simply misread *People* v. *DeRouen*. That case does not require pleading and proof of a burglary victim's identity.

In *People* v. *DeRouen*, *supra*, 38 Cal.App.4th 86 the defendant tried to benefit from a mistaken interlineation in the information that identified a shed he had burglarized as belonging to a particular person when in fact it belonged to someone else. The defendant argued that as a result of this mistake in the information, he was not on notice of the charges against him relating to the shed burglary, which was one of a number of burglaries he committed in a crime spree. The court rejected the argument, concluding defendant was on notice of the charges relating to the shed burglary "from the court's express findings at the preliminary hearing." (*Id.* at p. 93.) The court did not hold that the identity of the shed owner was an element of the crime as Woods suggests.

Judgment affirmed.

Wallin, Acting P. J., and Bedsworth, J., concurred.

A petition for a rehearing was denied July 15, 1998, and appellant's petition for review by the Supreme Court was denied September 23, 1998.