Filed 10/2/13  P. v. Zwick CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047104 |
| v. | (Super. Ct. No. 11WF1409) |
| LOREN MICHAEL ZWICK, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

James M. Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Loren Michael Zwick filed a timely appeal from convictions for first degree burglary and grand theft following a jury trial. The trial court also found him in violation of probation and sentenced him to the low term of two years for the burglary and a one-year consecutive term for the violation of probation. Sentence for grand theft was stayed pursuant to Penal Code section 654.[1]

We appointed counsel to represent Zwick on appeal. Counsel filed a brief that set forth the procedural history and facts of the case with citations to the record in accordance with *Anders v. California* (1967) 386 U.S. 738 and *People v. Wende* (1979) 25 Cal.3d 436. Counsel did not argue against the client, but advised the court no issues were found to argue on Zwick's behalf, although counsel identified five potential claims for our consideration. Zwick was given 30 days to file written argument on his behalf. He did so, but not within the time period given. In any event, we have considered each of the points raised and find none persuasive. The judgment is therefore affirmed.

FACTS

In April 2011, Thai Quan decided to sell his 2009 Harley Davison motorcycle. He posted an ad on the Orange County Craigslist with all pertinent information and an asking price of $7,800. During the morning of April 22, he and Zwick exchanged texts, agreed on a selling price of $7,500, and arranged to meet at Quan's house later that morning.

At around 10:00 a.m., Zwick and his friend John Virag arrived at Quan's residence. They found him in the garage with the motorcycle. Zwick asked to test drive the motorcycle, and Quan agreed after Zwick gave him a $1,000 in $100 bills as a cash deposit. When Zwick returned, he and Quan started to negotiate a price. Quan

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

reaffirmed his $7,500 asking price, but Zwick said he had only $6,800 in cash with him. Zwick gave Quan a wad of $100 bills that he said totaled $6,800. But when Quan counted the $100 bills, he discovered Zwick had handed him only $6,700.

Zwick accused Quan of stealing one of the $100 bills, and a search for the missing bill ensued. Quan, Zwick, and Virag searched the garage, and Quan emptied his pockets and allowed Zwick to conduct a patdown search. Notwithstanding what had just occurred, Quan ultimately lowered his price and agreed to sell Zwick the motorcycle for $7,000. Zwick asked Virag for the difference between $6,700 and $7,000. Virag came up with $200, handed it to Zwick, who in turned passed the money to Quan. Quan told Zwick there was a bank nearby, and Zwick drove away on the motorcycle with Virag following him in his car. Quan kept the $6,900.

After about 45 minutes, Zwick and Virag returned to Quan's home. Zwick asked to use Quan's bathroom. While he was in the house, Zwick found a helmet and asked to try it on. After Zwick tried on the helmet, all three men went inside the garage. Virag asked if he could relieve himself in Quan's backyard, and Quan said yes. Virag walked through the garage and into Quan's backyard, but he quickly returned to the garage.

With everyone back in the garage, Quan filled in the title information on the motorcycle's pink slip, and he handed the pink slip to Zwick. Zwick then asked if he could video the transaction, and he handed his cell phone to Virag. With Virag recording the event, Zwick counted the money for the camera and put it in an envelope. He then displayed the sealed envelope and the pink slip for the camera. Unsolicited, Zwick told Quan about some motorcycle parts vendors he knew, and he offered to write the information on the envelope. Meanwhile, Virag struck up a conversation with Quan about martial arts. Virag's position partially blocked Quan's view of Zwick, and his small talk distracted him. After three or four minutes, Zwick handed Quan the envelope. Virag and Zwick drove away with Zwick on the motorcycle and Virag in his car.

Quan took the envelope to his bank to make a deposit. But when he got to the bank's ATM, Quan discovered it contained a stack of $1 bills. Quan attempted to contact Zwick, but to no avail. Believing Zwick had switched envelopes, Quan drove to the Huntington Beach Police Department to report a crime. Police officers found Zwick's fingerprint on Quan's helmet. Quan later identified Zwick from a photographic lineup.

While he was waiting inside the police department, Quan received a call from an unknown number. He did not answer the call, but later discovered the number was registered to Zwick's father's law office. After some further internet research, Quan also discovered that Zwick was a magician.

One of the police officers testified Zwick initially agreed to come to the Huntington Beach Police Department and make a statement. But on the day he was to appear, Zwick said he had a medical emergency and did not want to give his statement over the telephone. The next day, Zwick's attorney contacted the police.

When Zwick was arrested at his probation officer's office, he gave the arresting officer an address and claimed he lived over the garage at this address. Zwick did not tell the officer he had also signed a lease agreement for an apartment he planned to move to on April 23, 2011. The landlord for the apartment complex testified Zwick filed an addendum to his lease on April 23, 2011 to add a motorcycle for purposes of storing it in the apartment complex. While a search of the residence Zwick claimed to live in produced nothing, officers did locate Quan's motorcycle at Zwick's new apartment complex. Zwick also had a set of keys for this apartment, and Virag admitted he was Zwick's roommate. Police were never able to find the pink slip or the keys to the motorcycle.

Zwick's mother confirmed her son's medical emergency on the same day the police initially contacted him. Virag denied doing anything to help Zwick switch

4

envelopes, although both he and Zwick's mother acknowledged Zwick was a proficient magician who could make envelopes disappear without anyone noticing.

DISCUSSION

Counsel listed five potential issues to assist the court in conducting its independent review of the record. (1) Did the trial court correctly deny Zwick's section 1181.1 motion for acquittal of all charges? (2) Was this a residential burglary as charged or mere fraud of a business? (3) Did defense counsel spend too much time on the incriminating conduct of his accomplice? (4) Did the prosecutor make improper use of Zwick's pre-arrest silence? (5) Did Zwick receive ineffective assistance of counsel?

Zwick's supplemental brief claims (6) a mistrial should have been granted on the grounds of prosecutorial misconduct, (7) there were 18 instances of attorney incompetence, and (8) the trial court made six prejudicial evidentiary rulings.

*1. Section 1118.1 Motion*

Zwick moved for an acquittal on grounds of insufficiency of the evidence at the conclusion of the prosecution's case. He argues the trial court erroneously denied this motion. We disagree.

"A trial court should deny a motion for acquittal under section 1118.1 when there is any substantial evidence, including all reasonable inferences to be drawn from the evidence, of the existence of each element of the offense charged. [Citations.]" (*People v. Mendoza* (2000) 24 Cal.4th 130, 175.)

Before the presentation of Zwick's case, the evidence demonstrated that while in Quan's garage, Zwick exchanged an envelope full of $1 bills for one containing $7,000 and removed Quan's motorcycle under the auspices of a legitimate sale. Thus, the trial court correctly denied Zwick's motion for acquittal.

5

## 2. *Residential Burglary*

Zwick questions whether he committed residential burglary or some other crime "where the garage was open for business and Zwick committed a fraud." We conclude the jury's verdict is proper.

Burglary of the first degree is burglary of "an inhabited dwelling house," and all other burglaries are of the second degree. (§ 460, subds.(a), (b).) As the jury instruction given here explained, "First degree burglary is the burglary of an inhabited house, or of a room within an inhabited house. [¶] A house is inhabited if someone uses it as a dwelling, whether or not someone is inside at the time of the alleged entry. [¶] A house includes any garage that is attached to the house, and is functionally connected with it." (CALCRIM No. 1701.)

The term "inhabited dwelling house" has been given a broad, inclusive definition in prior California case law for purposes of first degree burglary. (*People v. Cruz* (1996) 13 Cal.4th 764, 779; see also *People v. Woods* (1998) 65 Cal.App.4th 345, 350; *People v. Coutu* (1985) 171 Cal.App.3d 192, 193-194.)

Here, Zwick stole Quan's motorcycle from the garage *attached* to Quan's home. This is sufficient evidence to sustain the first degree burglary conviction. Furthermore, there is no evidence Quan used his garage to conduct some type of garage-based business. Thus, under the facts presented at trial, Zwick was properly convicted of first degree residential burglary.

## 3. *Virag*

Zwick questions "whether it was proper to spend so much time on the incriminating conduct of Zwick's accomplice, Virag[.]" He does not specify who spent too much time on Virag's conduct, nor does he specify whether the purported error occurred during Virag's testimony or closing arguments. Assuming the complaint is directed at trial counsel and intended to encompass all aspects of the case, we find no

evidence counsel spent an inordinate amount of time investigating, questioning, or arguing Virag's conduct.

*4. Pre-Arrest Silence and Motion for Mistrial*

During opening statement, the prosecutor made references to Zwick's failure to give a statement to police after he knew they suspected him of stealing Quan's motorcycle. Defense counsel objected and moved for a mistrial. After an in chambers discussion between the trial court and counsel, the court denied the defense mistrial motion and struck the prosecutor's reference to Zwick's pre-arrest silence. The court also gave the following admonishment to the jury: "the prosecutor pointed out that when the defendant was arrested and the officer said he had an arrest warrant for [a] stolen motorcycle, the defendant didn't say anything. I'm going to strike that and ask you not to consider that or tell you not to consider that for any reason. The reason being, that a person has a right to remain silent when they are arrested. And that cannot be used against them in any way. So, that whole thing of what he didn't say is – should not be considered in any way . . . ."

A motion for mistrial is directed to the sound discretion of the trial court. (*People v. Jenkins* (2000) 22 Cal.4th 900, 985.) A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. (*People v. Haskett* (1982) 30 Cal.3d 841, 854.) Whether a particular incident is incurably prejudicial is by its nature a speculative matter and the trial court is vested with considerable discretion in ruling on mistrial motions. (*Ibid.*) In reviewing ruling on motions for mistrial, we apply the deferential abuse of discretion standard. (*People v. Wallace* (2008) 44 Cal.4th 1032, 1068.) Here, the trial court considered inconsequential the prosecutor's brief references to Zwick's failure to give a statement after he knew he was suspected of stealing Quan's motorcycle. Under the circumstances presented here,

7

the trial court's decision to deny the mistrial motion and admonish the jury to cure the error was not beyond the bounds of reason, nor was it arbitrary or capricious.

## 5. *Ineffective Assistance of Counsel*

Both appellate counsel and Zwick suggest the incompetency of counsel as a potential reason to reverse the judgment. "[A] defendant seeking relief on the basis of ineffective assistance must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings. [Citations.]" (*People v. Cudjo* (1993) 6 Cal.4th 585, 623.)

While Zwick's counsel makes a generalized assertion of incompetence, Zwick cites 18 specific instances of incompetent representation in the reporter's transcript.[2] We have categorized each of Zwick's claims and provide citation to pertinent authority for our conclusion Zwick fails to demonstrate error or prejudice.

(a) Item number 2 claims prior counsel failed to provide trial counsel with Zwick's medical records, which would have proved the seriousness of Zwick's medical procedure and explained why he did not return the police investigator's call as Zwick promised to do. We reject Zwick's putative ineffective assistance of counsel claim on this ground.

---

[2] We have numbered Zwick's claims 1 through 18 as follows: (1) page 44 of the reporter's transcript, volume 1 of 4, line 16; (2) page 253, volume 2 of 4, line 10; (3) page 90, volume 1 of 2; (4) page 43, volume 1 of 2, line 26; (5) page 70, volume 1 of 2, line 14; (6) page 112, volume 1 of 2, line 4; (7) page 549, volume 4 of 4, line 22; (8) page 403, volume 2 of 4, line 9; (9) page 481, volume 2 of 4, line 1; (10) page 499, volume 3 of 4, line 9; (11) page 512, volume 3 of 4, line 10; (12) page 700, volume 3 of 4, line 25; (13) page 721, volume 3 of 4, line 4; (14) page 237, volume 1 of 1, line 22; (15) page 68, volume 1 of 2, line 19, (16) page 71, volume 1 of 2; (17) page 67, volume 1 of 2, line 2; and, (18) page 201, line 18.

The California Supreme Court has held that "claims of ineffective assistance are often more appropriately litigated in a habeas corpus proceeding" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267) because a defendant raising an ineffective assistance of counsel on appeal "must establish deficient performance based upon the four corners of the record" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003). Where, as here, "'the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal.'" (*Ibid*., quoting *People v. Kraft* (2000) 23 Cal.4th 978, 1068-1069.)

Neither Zwick's prior attorney, nor his trial counsel, was asked for an explanation for either cited instance of allegedly deficient representation, and the appellate record provides no answers to these questions. But this is not the type of actions for which no satisfactory explanation is possible. Thus, Zwick's claim must be rejected.

(b) Items number 3, 4, 14, 16, and 17 address prior counsel's cross-examination of witnesses or handling of evidence at the preliminary examination. Trial counsel's limited cross-examination at a preliminary hearing may be a tactic to defer the real effort to the trial itself. (*People v. Gibbs* (1967) 255 Cal.App.2d 739, 744.) The reason for this deference is trial counsel may have had a rational tactical reason for his cross-examination technique at the preliminary hearing.

With respect to the introduction of the "motorcycle transaction" video, this particular item of evidence was relevant and not unduly prejudicial to Zwick's case. Consequently, we find no error in counsel's handling of witnesses at the preliminary hearing, or the introduction of the videotape at trial.

(c) Items number 8, 15, and 18 address counsel's cross-examination of witnesses at trial. A trial counsel's decisions regarding the cross-examination of

9

witnesses falls with the range of tactical decisions, and rarely implicates ineffective assistance of counsel. (*People v. McDermott* (2002) 28 Cal.4th 946, 993.) This is not one of those rare cases where counsel's tactical decisions caused reversible error.

(d) Items number 1, 5, 9, 10, 11, 12, and 13 address trial counsel's failure to object to evidence adduced at trial. Whether to object to evidence introduced at trial is a tactical decision, and we grant substantial deference to counsel's decisions. (*People v. Williams* (1997) 16 Cal.4th 153, 215; see also *People v. Mayfield* (1993) 5 Cal.4th 142, 188 [rejecting the defendant's assertions on direct appeal of numerous errors on part of his counsel, including failure to object to hearsay evidence].) We have reviewed each item listed and counsel's performance was in keeping with the standard expected of competent criminal defense attorneys.

(e) Item number 6 claims one of Zwick's prior attorneys failed to maintain proper contact with the investigating officers. This claim is more properly raised by a petition for habeas corpus because the appellate record is inadequate for review of the issue. (See *People v. Mendoza Tello*, *supra*, 15 Cal.4th at p. 267.)

(f) Item number 7 addresses trial counsel's failure to object to the prosecutor's questioning Zwick's mother about whether she had been present during the trial. As Zwick notes, the trial court ruled Zwick's mother could remain in the courtroom and be discretely excused for certain testimony, notwithstanding her later appearance as a defense witness.

Assuming Zwick believes prosecutorial misconduct occurred and the issue was properly preserved on appeal, for prosecutorial misconduct to constitute a violation of the federal Constitution, the misconduct must so infect the trial with unfairness as to make the resulting conviction a denial of due process. (*Darden v. Wainwright* (1986) 477 U.S. 168, 181.) "Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves "'the

10

use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'" [Citations.]" (*People v. Benavides* (2005) 35 Cal.4th 69, 108.)

Zwick fails to establish either a denial of due process, or the use of deceptive or reprehensible methods by the prosecutor. It is not reasonably probable Zwick would have received a more favorable result in the absence of the prosecutor's single question to his mother about whether she had been present during the trial. (*People v. Haskett*, *supra*, 30 Cal.3d at p. 866.)

(g) With respect to the motion for mistrial, Zwick's trial attorney did the appropriate thing by objecting to the prosecutor's references to his client's pre-arrest silence and moving for a mistrial. The trial court denied the motion and we have found no basis to reverse its decision. Furthermore, the record does not support a generalized assertion of attorney incompetence because Zwick fails to establish prejudice as a result of counsel's performance.

## 6. *Trial Court's "Unjust" Rulings*

Zwick asserts six of the trial court's evidentiary rulings so prejudiced his case as to require reversal of the judgment.[3] We disagree.

Under California Constitution, article 6, section 13, " No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of

---

[3] We have numbered Zwick's contentions 1 through 6 as follows: (1) Page 165 of the reporter's transcript, volume 1 of 4, line 13; (2) page 192 of the reporter's transcript, volume 1 of 4, line 19; (3) page 75 of the reporter's transcript, volume 1 of 4; (4) page 246 of the reporter's transcript, volume 2 of 4, line 14; (5) page 49 of the reporters transcript, volume 1 of 2, line 46; and (6) page 23 of the reporter's transcript, volume 1 of 2, line 27.

the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

In keeping with this constitutional provision, the Evidence Code precludes setting aside a verdict or finding or reversing a judgment based thereon, because of the erroneous admission of evidence (Evid. Code, § 353) or the erroneous exclusion of evidence (Evid. Code, § 354) unless the error complained of has resulted in a miscarriage of justice.

We have reviewed each instance of alleged error and found either no error, or insufficient evidence to demonstrate the trial court violated Zwick's right to due process of law and a fair trial.

In conclusion, we have examined the record and found no arguably meritorious issues. (*People v. Wende, supra,* 25 Cal.3d at p. 436.)


DISPOSITION


The judgment is affirmed.



THOMPSON, J.

WE CONCUR:


MOORE, ACTING P. J.


ARONSON, J.


12