Filed 4/3/15  P. v. Tapia CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F068326 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CRM029693) |
| GERARDO TAPIA, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Holly Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Chung Mi (Alexa) Choi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Cornell, Acting P.J., Gomes, J. and Poochigian, J.

**INTRODUCTION**

Appellant Gerardo Tapia pled no contest to one count of residential burglary. On appeal, he contends that his crime did not constitute a conviction for first degree burglary but instead a conviction for second degree burglary. We disagree and affirm the judgment.

**PROCEEDINGS**

Appellant was charged in a criminal complaint filed on October 1, 2013, with three separate felony counts of first degree burglary (Pen. Code, § 459, counts 1, 2, & 3) (unless otherwise designated, all statutory references are to the Penal Code), felony possession of a concealed dirk or dagger (§ 21310, count 4), and misdemeanor possession of narcotics paraphernalia (Health & Saf. Code, § 11364.1, subd. (a) [now § 11364, subd. (a)], count 5).[1]

On October 10 appellant entered into a plea agreement in which he would admit count 1 and receive five years' probation, with a suspended sentence of six years. Appellant executed a felony advisement rights, waiver and plea form (plea form) acknowledging (1) he discussed the case with his attorney; (2) attorney explained the elements of the charged offenses, including any enhancements, (3) appellant discussed the facts known to him about the case; and (4) appellant discussed his constitutional and statutory rights, as well as any defenses, with counsel.

In the plea form, appellant acknowledged and waived his rights pursuant to *Boykin*/*Tahl*.[2] Appellant initialed his acknowledgment that "There is a factual basis for my plea and the court may consider any report or transcript in the file in finding there is a

---

[1]  All further date references are to the year 2013. All of the burglary counts allegedly occurred at the Summertrace Resort Apartments on Devonwood Drive in Merced. Count 1 allegedly occurred on July 14, count 2 allegedly occurred on July 16, and count 3 allegedly occurred on July 18.

[2]  *Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal.3d 122.

2.

factual basis for my plea." Appellant agreed in the plea form that he was pleading no contest to one count of first degree burglary. Appellant further waived a formal probation report.

Prior to the trial court taking appellant's change of plea, the court noted a discussion between the parties concerning whether appellant's burglaries were first or second degree burglary. The court was about to recess for a week when the parties entered into a plea agreement. Defense counsel advised the court that he had explained the offer to appellant and appellant was "pretty adamant he wants to proceed today with the offer and his plea." Defense counsel advised appellant it would be better to wait a week and maybe appellant could get a better result, but appellant wanted to proceed with the plea bargain.

The trial court verified from appellant that he had talked to his attorney, he had had enough time to discuss his case, and he intended to change his plea to guilty or no contest. Appellant confirmed that he had initialed the plea form, had no questions about the form, and understood it. Appellant acknowledged that he understood and waived his *Boykin/Tahl* rights, and with full knowledge of the consequences of the plea, pled no contest to count 1, felony residential burglary on July 14. Defense counsel concurred in appellant's decision to waive his rights and change his plea. Appellant further waived preparation of a full probation report but would receive a limited report reviewing only custody credits and fines.

On October 17, the trial court sentenced appellant to a suspended prison term of six years. The court placed appellant on probation for five years upon various terms and conditions. Appellant filed a timely notice of appeal and obtained a certificate of probable cause from the trial court.

**FACTS**

Because there was no preliminary hearing or full probation report, the facts are limited to information set forth in the police reports. On July 15 Merced Police Officer

3.

McComb met with the owner of the Summertrace Resort Apartments, John Maxwell, who reported that coin-operated laundry machines in the apartment complex were being broken into and the change boxes were being emptied. Maxwell placed a hidden camera in one of the laundry rooms and captured video footage of a subject breaking into the laundry room on July 14 just before midnight. The subject had a small tool in his hand that he slipped into the locking mechanism of the laundry machine to manipulate the lock. The subject was an unknown Hispanic male whom Maxwell did not recognize as a tenant or former employee. McComb was able to obtain a partial fingerprint.

There are five separate laundry rooms in the apartment complex. One laundry room had a video surveillance camera. The lights in the laundry rooms were maintained, were on at all times, and could not be turned off. Detective Rodriguez obtained two photographs of the suspect from the video footage and copied the video onto a flash drive. Appellant was later identified as the thief in the video.

In August Rodriguez received video footage from Maxwell of appellant entering a laundry room in the apartment complex on July 16 at 10:27 p.m. and taking about $300 in quarters from a laundry machine. Rodriguez also received a video from Maxwell showing appellant opening coin boxes in another laundry room of the apartment complex at 11:00 p.m. on July 18.[3]

## FIRST DEGREE BURGLARY

Appellant challenges his conviction for first degree burglary, arguing that his entry into a detached, unlocked laundry room qualified as second degree, not first degree, burglary. Appellant's argument rests to a large extent on distinguishing *People v. Woods* (1998) 65 Cal.App.4th 345 (*Woods*). Appellant argues he can raise this point because he obtained a certificate of probable cause. The People argue that appellant cannot

---

[3]    Appellant was arrested in September 2013 for offenses unrelated to the burglaries, possession of a concealed dirk or dagger and possession of narcotics paraphernalia.

challenge the sufficiency of the evidence after entering a plea of guilty or no contest, even with a certificate of probable cause. The People further argue that the holding in *Woods* is applicable to this case.

When a defendant changes his or her plea to guilty or no contest, the plea is deemed to constitute a judicial admission of every element of the offense charged. It serves as a stipulation that the People need not introduce proof to support the accusation. "[T]he plea ipso facto supplies both evidence and verdict." (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1363-1364 (*Voit*).)

"Under section 1237.5, a defendant may appeal from a conviction on a plea of guilty or no contest only on grounds going to the legality of the proceedings; such a plea precludes appellate consideration of issues related to guilt or innocence, including the sufficiency of the evidence …." (*People v. Palmer* (2013) 58 Cal.4th 110, 114 (*Palmer*).) Issues concerning a defendant's guilt or innocence are not cognizable on appeal from a guilty plea. When a defendant admits guilt, he or she waives an appellate challenge to the sufficiency of the evidence of guilt. The same restrictions on appellate issues apply to a no contest plea and the admission of an enhancement. (*Voit*, *supra*, 200 Cal.App.4th at p. 1364.)

To appeal after conviction by plea of guilty or no contest, a defendant must obtain a certificate of probable cause and the cognizable issues are limited to those based on reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings resulting in the plea. The issuance of a certificate of probable cause does not operate to expand the grounds upon which an appeal may be taken. Among the issues that can be raised after a guilty plea or a plea of no contest is whether a defendant knowingly, voluntarily, and intelligently waived his or her rights in entering the plea. (*Voit*, *supra*, 200 Cal.App.4th at p. 1364.) A defendant also may assert that his or her admission included a legal impossibility. (*Id*. at p. 1365.)

To the extent that appellant's contention is a challenge to the factual basis for his plea or a claim that there was insufficient evidence to support his conviction for first degree burglary, his claim is not cognizable on appeal, even with the certificate of probable cause he obtained. In absence of facts to the contrary, we are left with a no contest plea that accepts the necessary factual basis to support a first degree burglary conviction.[4] Appellant's challenge to his first degree burglary conviction can include a challenge to the legal impossibility of his plea. Such a challenge, however, must be based on the available facts and not on conjecture.

Assuming arguendo that appellant's challenge is based on an assertion that his plea is a legal impossibility, we turn to his contention that the facts of this case are different from those in *Woods*. In *Woods*, the defendant burglarized the laundry room of an apartment complex. A washing machine had been pulled from the wall and its coin box broken. The laundry room door was locked and fresh pry marks were visible on laundry room door. The apartment complex was a two-story, U-shaped building with an open-air courtyard in the middle. Entry into the individual apartments was through the open courtyard. There were unlocked wrought iron gate entrances on three sides of the complex. The laundry room was on the ground floor in the corner of the complex.

---

[4] The factual basis for appellant's plea was not formally set forth in the plea form or during the change of plea hearing. Appellant acknowledged when he initialed and executed the plea form that (1) he discussed the case with his attorney; his attorney explained the elements of the charged offenses, including any enhancements; (3) appellant discussed the facts known to him about the case; and (4) appellant discussed his constitutional and statutory rights, as well as any defenses, with counsel. Appellant stipulated to a factual basis for his plea and that the trial court could refer to any report to establish a factual basis for the plea. (See *Palmer, supra,* 58 Cal.4th at pp. 117-119 [factual stipulation by counsel without reference to documents establishing factual basis for plea is adequate to establish a factual basis for the defendant's guilty or nolo contendere plea].) This stipulation was not made by counsel, but by appellant himself. Any error in the trial court's factual basis inquiry is deemed harmless if the record otherwise supports the factual basis finding. (*People v. Holmes* (2004) 32 Cal.4th 432, 443; *In re M.V.* (2014) 225 Cal.App.4th 1495, 1526-1527.)

Immediately above and adjacent to the laundry room were occupied apartments. (*Woods*, *supra*, 65 Cal.App.4th at p. 347.)

Woods did not dispute that he burglarized a laundry facility within an apartment complex. He contended that the laundry room in the apartment complex was like a commercial laundromat and that he could be guilty only of second degree burglary. (*Woods*, *supra*, 65 Cal.App.4th at p. 347.) The court in *Woods* noted that the burglary statute defines the term "inhabited" as current use for dwelling purposes, whether or not it is occupied. (*Ibid.*) Furthermore, a dwelling house includes areas not normally considered part of the living space of a home. (*Id.* at pp. 347-348.) Among the examples identified in *Woods* are garages attached to residences but accessible only from outside the main residence, entry into a storeroom connected to home by a roofed breezeway, and garage or storage areas that are functionally interconnected with and are an integral part of a building's living quarters. (*Id.* at p. 348.)

The court in *Woods* noted that the defendant had failed to cite authority for his argument that a laundry room must be an integral part of an individual apartment rather than an integral part of an apartment complex in order to constitute an inhabited dwelling. *Woods* found the relationship of the laundry room to the complex itself was the proper focus of inquiry and held that "[b]ased on the evidence of the physical placement of the laundry room within the complex and the fact it was used by tenants to do their laundry, a household chore," the *Woods* court found no error in the trial court's implied finding that the laundry room was an integral part of the complex and an inhabited dwelling and therefore met the objective test for an inhabited dwelling. (*Woods*, *supra*, 65 Cal.App.4th at p. 349.)

*Woods* further rejected the defendant's argument that the laundry room failed the alternative "'reasonable expectation test'" for an inhabited dwelling analyzed in *People v. Brown* (1992) 6 Cal.App.4th 1489. (*Woods*, *supra*, 65 Cal.App.4th at p. 348.) The reasonable expectation test focuses on the protection the inhabitants of the structure

7.

reasonably expect because "'one of the purposes of the burglary statute is to protect against unauthorized entry and the attendant danger that the occupant will react violently to the intrusion.'" (*Id.* at p. 349.) The proper question is whether the nature of the structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions. (*Woods*, at p. 349; *Brown*, at p. 1496.)

The court in *Woods* rejected the defendant's argument that the apartment complex was not a security complex, tenants had no expectation of privacy in the laundry room, and tenants would expect to find strangers in the laundry room. *Woods* reasoned that the strangers whom apartment tenants would expect to find in the laundry room would be fellow tenants, not burglars. (*Woods, supra,* 65 Cal.App.4th at p. 349.) *Woods* held that under the reasonable expectation test, the laundry room was an area tenants would expect protection from unauthorized intrusions. (*Id.* at p. 350.) *Woods* concluded that the safety and privacy expectations surrounding an inhabited dwelling house were present in the common area laundry room of the apartment complex. (*Ibid.*)

Appellant attempts to distinguish the apartment complex described in *Woods* from the one he burglarized, emphasizing the fact that unlike the laundry room in *Woods*, the laundry room here was not locked. [5] According to appellant, locking the doors implied limited access to the laundry room. Appellant further argues that the five laundry rooms were unlocked and detached from the rest of the complex and were not covered by a single roof. These latter factual contentions, however, are not established by, and cannot be reasonably implied from, the police reports.

---

**5** Appellant makes the further factual contention that the apartment manager stated that the laundry rooms were routinely kept unlocked. This point is inferable, but not clearly established, from the police reports. Defense counsel argued this factual point to the court. For the purposes of our analysis, we assume the five laundry rooms in the apartment complex were not locked.

Assuming arguendo that the apartment complex here was a large, open facility, without the doors to the laundry rooms routinely locked and the laundry rooms not under a single roof, we still find this case analogous to *Woods*. Whatever the configuration of the five laundry rooms in the Summertrace Resort Apartments, appellant was not recognized by Maxwell as a resident or former employee of the apartments. Without evidence in the record to the contrary, we can assume that the laundry rooms were for residents of the apartments and not for use by the general public. We note that the apartment complex described in *Woods* also was not a security complex. (*Woods*, *supra*, 65 Cal.App.4th at p. 349.)

The public policy of protecting residents from burglars while doing their laundry is no different in this case than it was in *Woods*. Although there are apparent structural differences between the apartment complex in *Woods* and the apartment complex here, the risk of violent confrontations between burglars and tenants, dwelling in the complex and using its common laundry facilities, is the same. This is so whether we apply the object test for an inhabited dwelling or the reasonable expectation test.

## DISPOSITION

The judgment is affirmed.