Filed 8/29/14  P. v. Purdie CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049913 |
| v. | (Super. Ct. No. FSB1200522) |
| RICHARD ALVIN PURDIE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Annemarie G. Pace, Judge.  Affirmed.  Remanded for a new sentencing hearing.

Kurt David Hermansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Brendon W. Marshall and Christopher Beesley Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Richard Alvin Purdie of being a felon in possession of a firearm (former Pen. Code, § 12021, subd. (a)(1) [now § 29800, subd. (a)(1), Stats. 2010 ch. 711, § 6, eff. Jan. 1, 2011]; count 2),[1] first degree residential burglary (§§ 459, 460; count 9), and receiving stolen property (§ 496; counts 10, 11, 12, 13). The trial court declared a mistrial on counts 1 and 4 through 8.

At a separate proceeding, the trial court found true allegations Purdie had two prior violent or serious felony convictions under the "Three Strikes" law and section 667, subdivision (a)(1), and that he had served seven prior prison terms (§ 667.5, subd. (a)(1)). At the sentencing hearing, the trial court denied Purdie's request to strike his prior serious or violent felony convictions for sentencing purposes (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*)), and imposed an indeterminate term of 25 years to life, plus a determinate term of 19 years.

Purdie challenges the sufficiency of the evidence to prove he committed first degree burglary as alleged in count 9. He also claims his attorney provided ineffective assistance of counsel, the trial court failed to orally pronounce judgment on the strike priors, and the abstract of judgment does not accurately reflect the trial court's imposition of sentence. We agree with the final two contentions.

We affirm the convictions, and remand the matter for the trial court to enter into its minutes the reasons for denying Purdie's *Romero* motion, and for the clerk of the San Bernardino Superior Court to correct the abstract of judgment to reflect the trial court's true findings on Purdie's strike priors.

**FACTS**

In 2007, Robert Phelps and his wife purchased a home in Running Springs, California. Phelps testified he purchased the home as a vacation property, and that "[w]e (his family) are going up there for New Year's. We go several times in the summer,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

maybe quarterly." He also testified that beginning in April 2011, he started renting the property "to church groups, youth groups, large families." Phelps explained, "I'm the property manager, as well as the owner . . . ." But regardless of what type of ownership interest prompted his actions, Phelps made weekly visits to the home for the purpose of maintenance, and he effected periodic home improvement projects.

In October 2011, tenants gained access to the home by retrieving a key from a lockbox. At the time, Phelps was overseeing the construction of a roof over a deck at the home. He generally spent the day working at the Running Springs home, but he returned to his main residence at night.

On the morning of October 21, Phelps came to the property and noticed that someone had pried open the lockbox, grabbed the key, entered the home, and stolen several items, including a projection screen television, a laptop computer, flash drive, and printer, a flat screen television, and various tools. While no one was staying in the property at the time of the break-in, it had been rented the prior week.

In November 2011, Purdie, who was then on parole, lived in a mobile home in San Bernardino County. One day, the employees of an automobile repossession company went to Purdie's home to repossess his truck. The employees approached the truck to verify that it was the subject of the repossession. When they did, Purdie came out of his home carrying a shotgun. The employees fled and called 911.

Several deputies from the San Bernardino County Sheriff's Office, including Deputy John Wilson, responded to the call. Wilson knocked on Purdie's front door, but received no response. He heard the sound of footsteps coming from inside and decided to break a sliding glass door to gain entry. Once inside, Wilson saw Purdie standing near the front door. Wilson ordered Purdie to go outside where other officers

3

placed Purdie in handcuffs. Wilson then found Ashley Nicole Brown[2] and a shotgun in the bedroom. In front of Brown and Purdie, Wilson walked out of the mobile home, held up the shotgun and "made a flippant comment, like: Who does this belong to?" Purdie told Wilson the gun belonged to him and not Brown, and that he knew it was loaded.

During a search of the mobile home, deputies discovered property that had been stolen from Phelps's home (count 13), as well as property belonging to Ronald Fossett (count 10), Mark Posjena (count 11), and Daniel Ramirez (count 12). The deputies found Purdie's cell phone and a flash drive. A picture of Phelps's truck was found on the flash drive. The cell phone[3] yielded several incriminating text messages. One stated Purdie had "a 12-gauge shotgun" for sale. Other text messages sent during the days immediately after the Phelps burglary said things like, "[h]ey homey, I'm at the mansion with the projection screen TV." And, "[g]ot projector. Got Vizio plus more." In fact, Purdie provided prices for items taken during the burglaries: "The projector sells for [$1,299]; the Vizio, [$649]; the iMac, [$799]; the compressor, [$399]; and the radial arm saw, [$449]. These are the selling prices from the websites."

---

[2] Brown pled guilty to first degree burglary and admitted a prior prison term after the presentation of the evidence, but before the jury returned its verdict. She was sentenced to three years in prison.

[3] Purdie did not object to the introduction of cell phone evidence at trial and raised no claim on appeal as to the legality of the search and seizure of his cell phone. In June 2014, after briefing in this case, the United States Supreme Court decided *Riley v. California* (2014) __U.S. __ [134 S.Ct. 2473], which held absent a specific exception to the warrant requirement, a warrantless search of a person's cell phone violates the Fourth Amendment's guarantee against unreasonable search and seizure. The record reveals Purdie was on parole and well known to the deputies. Moreover, one of the deputies confirmed Purdie and Brown's identities through CLETS, which is a computer program that provides driver's license numbers, a physical description, and prior contacts with police with a subjects first and last name and birth date. Thus, the record is sufficient to conclude the deputies searched Purdie's cell phone with knowledge he was on parole. "[T]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." (*Samson v. California* 547 U.S. 843, 857.).

**DISCUSSION**

*1. Sufficiency of the Evidence of First Degree Burglary* (*Count 9*)

In assessing a claim of insufficiency of the evidence, our task is to review the entire record, in the light most favorable to the judgment, in order to determine whether it discloses substantial evidence, evidence that is reasonable, credible, and of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

Section 459 defines burglary as the entry of "any house . . . with intent to commit grand or petit larceny or any felony." Section 460 states in pertinent part: "Every burglary of an inhabited dwelling house . . . is burglary of the first degree. [¶] (b) All other kinds of burglary are of the second degree." (§ 460, subds.(a), (b).) The term "inhabited" is specifically defined as "currently being used for dwelling purposes, whether occupied or not." (§ 459.) The terms "residence" and "'inhabited dwelling house'" have been interpreted to have equivalent meanings. (*People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1107.)[4]

In the context of the burglary statute, the word "'occupied' means that persons are actually present in a dwelling." (*People v. Guthrie* (1983) 144 Cal.App.3d 832, 840.) The word "inhabited" means the structure is "currently being used for dwelling purposes" whether or not the residence is occupied. (§ 459.) Even if the owner is temporarily absent, the dwelling is still inhabited. (*Guthrie*, at pp. 839-840.) Consequently, habitation is not dependent on the occupant's intention to use the structure for habitation in the future. If the person uses the structure for habitation when the burglary occurs, his or her possible intent to abandon the habitation in the future does not

---

[4] The trial court instructed the jury, in accordance with CALCRIM No. 1701, that "[a] house is *inhabited* if someone uses it as a dwelling, whether or not someone is inside at the time of the alleged entry[,]" and that "[a] house is not *inhabited* if the former residents have moved out and do not intend to return, even if some personal property remains inside."

5

alter its character as an inhabited dwelling.  (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 320.)

Purdie claims the conviction on count 9 must be reversed because the prosecution failed to prove beyond a reasonable doubt that he entered an inhabited dwelling as required for first degree burglary.  He relies on cases discussing the concepts of dwelling and occupancy in cases where the property involved was a short-term rental. The Attorney General primarily relies on *People v. DeRouen* (1995) 38 Cal.App.4th 86, 90-92 (*DeRouen*), overruled on other grounds in *People v. Allen* (1999) 21 Cal.4th 846, 864-866, and other cases to argue the Phelps's property should be treated as a vacation home, which is occupied until the owner no longer intends to return.  While this case does not fit neatly into either paradigm, we must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  (*People v. Rayford* (1994) 9 Cal.4th 1, 23.)  Viewed in that light, the evidence supports the jury's verdict.

Various factors are relevant to the interpretation of the word "inhabited" for purposes of the burglary statutes.  The fact that a dwelling is not the regular residence of its occupants is not dispositive.  Vacation homes and second homes remain inhabited even when they are used sporadically by their residents.  (*DeRouen*, *supra*, 38 Cal.App.4th at pp. 90-92, overruled on other grounds in *People v. Allen*, *supra*, 21 Cal.4th at pp. 864-866.)  Generally, "[A] house remains inhabited even if the burglary occurs while the residents are away for an extended period of time."  (*People v. Cardona* (1983) 142 Cal.App.3d at p. 483.)  Thus, the "dispositive element is whether the person with the possessory right to the house views the house as his dwelling."  (*Id*. at p. 484.)

This principle was recently reaffirmed in *People v. Burkett* (2013) 220 Cal.App.4th 572 (*Burkett*).  In *Burkett*, the property owner evicted a tenant to resume occupancy of one home after a foreclosure forced his removal from another.  (*Id.* at pp. 575.)  The tenant left the rental unit empty and retained the keys.  (*Ibid.*)  Although

6

the landlord had the intent to occupy the rental a few days after the tenant left, he had not yet turned on the utilities, or moved any personal property into the house when the defendant and a cohort entered the home without permission and caused over $400 in damage. (*Id.* at p. 576-577.)

The appellate court determined the defendant's conviction for first degree burglary had to be modified to second degree because "none of the indicia [of habitation were] present except for the self-declared intent of the owner to occupy the house in the future." (*Burkett*, *supra*, 220 Cal.App.4th at p. 582.) In *Burkett*, the tenant who had residency removed all her belongings with no intent to return, and the owner, whose intent to return was recent and based on unforeseen circumstances, had yet to assume any form of occupancy. Thus, the crime was second degree burglary.

Here, the Phelps's property, which was both a short-term rental and a vacation home, had all the indicia of habitation when Purdie entered without permission. Phelps had turned on the utilities, and moved personal property into the house. He used the home for vacations before the burglary, and intended to use it as such in the near future. Phelps not only provided the home with the utilities and possessions suitable for use by short-term residents, but also for the use of his own family. He maintained the home, and made periodic home improvements.

Purdie fails to persuade us that the periodic occupancy of the home by people unrelated to owner, and paying for the privilege, should somehow render it *unoccupied* under the burglary statues the moment the most recent renter decamps. No case has so held and the argument is illogical. Especially, when as here, the owner intends to use the home and periodically does so. Finally, there is no evidence that Phelps's ever *permanently* ceased to use their second home, and their intermittent occupancy was with the express intent to return in the future. Consequently, substantial evidence supports the first degree burglary conviction.

7

Because we conclude the evidence is sufficient to support the first degree burglary conviction on count 9, we need not address Purdie's related claims that he is eligible for resentencing under the Three Strikes Reformation Act of 2012.

## 2. *Ineffective Assistance of Counsel*

Purdie and Brown were tried at a joint trial. During cross-examination of Wilson, Brown's attorney, Stuart O'Melveny,[5] asked Wilson what Purdie said when Wilson inquired who the gun belonged to. During the sidebar discussion that followed Purdie's attorney, Allen Phou, stated, "I would like to lodge an objection to the statement and the testimony regarding my client admitting to officer—Deputy Wilson about the possession of the shotgun, and he knew it was loaded. [¶] This is a *Miranda* [*v. Arizona* (1966) 384 U.S. 436] issue that was initially—I think that's why it was never brought up, and I never did an in limine motion because first, I never expected it, but I can see now that the issue is now my client already invoked his right to *Miranda*. In the police report—I'm not sure if the Court is aware—but I don't think—we haven't discussed it . . . ."

After a brief discussion with counsel, the court stated that it seemed as though Purdie had been in custody when he made the statement, and then the court observed, "Mr. O'Melveny, I wish you would have spoke up, before you sprung that on everybody." Phou moved for a mistrial, stating that neither the prosecutor, nor O'Melveny, had never indicated any intention to introduce the statement, and the introduction of Purdie's statement at trial violated his client's constitutional rights. The trial court then adjourned proceedings for the day.

---

[5] The face page of the reporter's transcript lists Allen Phou as Brown's attorney and Stuart O'Melveny as Purdie's attorney. However, the transcript reflects O'Melveny was cross-examining Wilson about Purdie's statements, and that the sole objection to Wilson's response was made by Phou on behalf of his client. Despite the discrepancy between the face page of the reporter's transcript and the body of the reporter's transcript, the parties agree Brown's attorney sought to introduce Purdie's admission. Because the party's view of the record is logical, we accept their representation of events.

The following morning, the trial court conducted an Evidence Code section 402 hearing outside the presence of the jury. At the conclusion of the hearing, and after listening to the arguments of counsel, the court decided to deny Phou's mistrial motion. The trial court also decided to admonish the jury, directing the panel "[t]o disregard the testimony of Deputy Wilson regarding any statements Mr. Purdie said to him and do not consider those statements in any way. Those statements were not admissible under the law and cannot be considered by you for any purpose."

Purdie argues Phou's failure to ensure the exclusion of his admission amounts to prejudicial ineffective assistance of counsel. We disagree.

"'In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient . . . ." "Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citations.] Prejudice is shown when there is a '"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citations.]' [Citation.]" (*People v. Goldman* (2014) 225 Cal.App.4th 950, 957.)

Generally, "[i]t is not necessary for us to consider the performance prong of the test before considering whether the defendant suffered prejudice as a result of counsel's alleged deficiencies. [Citation.] 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.' [Citation.]" (*People v. Goldman*, *supra*, 225 Cal.App.4th at pp. 957-958.) That is the course we follow here because there was no prejudice.

As the Attorney General asserts, there was overwhelming evidence of Purdie's gun possession without his admission of ownership. The substantial evidence is the fact he used a shotgun to scare the employees who came to repossess his car, and the gun was found in Purdie's residence. The week before he was arrested Purdie also sent a text message about selling a 12-gauge shotgun. Consequently, while Phou's failure to

9

properly address the *Miranda* issue may have been below an objectively reasonable standard of performance, there was no prejudice to Purdie, and hence no justification for a reversal of the judgment.

*3. Sentencing Error*

Purdie contends the trial court failed to orally pronounce judgment on the strike prior allegations, and that the abstract of judgment does not reflect the trial court's true findings on those allegations. The Attorney General agrees the court failed to orally pronounce judgment on the strike priors, but contends the trial court's denial of Purdie's *Romero* motion and the sentence imposed constitutes an implied finding on the truth of the strike priors. In addition, the Attorney General points out that under the Three Strikes law the trial court had no authority to impose a lesser sentence after denying the *Romero* motion.

At the court trial on the truth of the prior convictions, the prosecution introduced several documents and the testimony of foundational witnesses that attested to the truth of Purdie's prior convictions. In addition to other findings on the truth of various sentencing enhancement allegations, the trial court expressly found true the allegation Purdie had suffered two prior convictions for first degree burglary, the alleged "strike" priors.

After reviewing the evidence and making its findings, the trial court asked the parties if they wanted a probation report, although the court stated, "I don't know that we need it. The prison system is well aware of Mr. Purdie. The Court already knows what it's going to do essentially, having reviewed Mr. Purdie's record." The district attorney indicated that restitution was an issue and requested a probation report. The trial court then selected a date for the sentencing hearing, at which time it was contemplated that Purdie would move for a new trial and file a *Romero* motion.

Several months later, at the sentencing hearing, the trial court denied Purdie's motion for a new trial and declined to strike Purdie's prior convictions, stating,

10

"I think that given [Purdie's] lengthy criminal history and conduct in this case, that he clearly falls under the spirit of the [T]hree [S]trikes law . . . ." The trial court asked if there was any legal cause why judgment should not be pronounced, and neither party objected. Then the trial court imposed a sentence consistent with having found true the allegations Purdie suffered two or more "strike" priors. However, the trial court did not orally pronounce judgment on the strike priors.

Relying on *In re Candelario* (1970) 3 Cal.3d 702, 706 (*Candelario*) and *People v. Williams* (1980) 103 Cal.App.3d 507, 518-519 (*Williams*), Purdie claims the trial court's failure to orally pronounce judgment on the strike priors, and the fact that the abstract of judgment does not reflect the trial court's true finding on those priors, equals a silent record from which we may infer the trial court intended an act of leniency. Furthermore, he contends the trial court failed to provide a statement of reasons for denying his *Romero* motion, in violation of section 1385. Purdie insists a new sentencing hearing is required. Again we disagree.

*Candelario* is distinguishable. There, the defendant admitted a prior conviction, but the trial court entered judgment on the substantive offense alone and committed defendant to prison. (*Candelario*, *supra*, 3Cal.3d at pp. 704-705.) Over a month later, the trial court amended the abstract of judgment to add the prior conviction, thus doubling the minimum term of defendant's indeterminate sentence. (*Id.* at pp. 704-706.)

In concluding that the attempted modification was not permitted, the Supreme Court said: "Reference to the prior conviction must be included in the pronouncement of judgment for if the record is silent in that regard, in the absence of evidence to the contrary, it may be inferred that the omission was an act of leniency by the trial court. In such circumstances the silence operates as a finding that the prior conviction was not true. [Citation.]" (*Candelario*, *supra*, 3 Cal.3d at p. 706, fn. omitted; see also *People v. Mesa* (1975) 14 Cal.3d 466, 470-472.)

11

Here, the trial court not only found the strike priors true, but also stated Purdie was the classic repeat offender contemplated by the Three Strikes law. Other than the failure to follow a procedural rule, the trial court did not indicate any leniency toward Purdie. In addition, the sentence imposed is a full third strike sentence.

*Williams* is also inapt. There the defendant pled guilty to robbery and admitted a prior prison term. As part of a plea bargain, two other alleged priors and separate robbery and burglary charges were dismissed. The trial court failed to ask the defendant if he suffered the prior prison term, which violated former section 1025. (*Williams*, *supra*, 103 Cal.App.3d at pp. 512-515.)

On appeal, the defendant argued the trial court's failure to specifically sentence him to prison for his prior felony conviction at the time of the oral pronouncement of judgment necessitated striking the prior, citing *Candelario*. (*Williams*, *supra*, 103 Cal.App.3d at p. 516.) After discussing *Candelario* and *People v. Mesa* (1980) 103 Cal.App.3d 507, 516-518 (*Mesa*), and respondent's argument that *Candelario* and *Mesa* were inapplicable because they were filed during the years California followed indeterminate sentencing, the *Williams* court concluded, "We agree with respondent that extension of the *Candelario* rationale to DSL [determinate sentencing law] cases would undermine the legislative requirement of a statement of reasons on the record for the striking of Penal Code section 667.5 enhancement. [Citation.] One clear purpose of this requirement is to permit appellate review (and possible reversal for abuse of discretion) of an order striking an enhancement." (*Williams*, *supra*, 103 Cal.App.3d at p. 516.)

Purdie's reliance on *Williams* is puzzling. He argues the trial court's failure to pronounce judgment and record its finding in the minutes indicates leniency, but the *Williams* court also observed, "Even where a trial court expressly states that it intends to strike the prior as an act of leniency, it must state supporting reasons on the record. Since an express showing of lenient intent is not enough without more to uphold the striking of

12

an enhancement, then it follows that an *inference* of lenient intent is not enough to warrant a striking of the prior." (*Williams*, *supra*, 103 Cal.App.3d at p. 519.)

Furthermore, section 1200 provides: "When the defendant appears for judgment he must be informed by the Court, or by the Clerk, under its direction, of the nature of the charge against him and of his plea, and the verdict, if any thereon, and must be asked whether he has any legal cause to show why judgment should not be pronounced against him." Traditionally, the defendant relieves the court of the requirements of section 1200 and the formalities required by waiving formal arraignment for judgment. Phou did not object on the grounds Purdie asserts now. Moreover, the California Supreme Court has deemed the record not "silent" when, as here, the oral pronouncement of judgment "speaks" to impliedly affirm the truth of an enhancement allegation. (See *People v. Clair* (1992) 2 Cal.4th 629, 691, fn. 17; *People v. Chambers* (2002) 104 Cal.App.4th 1047, 1050-1051.)

In short, we are not confronted with a silent record that indicates leniency. To the contrary, the trial court here imposed sentence based upon Three Strikes sentencing rules *after* expressly finding that Purdie presented a classic Three Strikes case. There is no miscarriage of justice and a remand soley for the purpose of permitting to make an express finding would be an exaltation of form over substance. However, there is another reason to remand this case for resentencing, thus the trial court has the opportunity to make express findings and properly record those findings in the record.

Here, the trial court also failed to give a statement of reasons for denying Purdie's *Romero* motion. Although the court stated adequate reasons for its decision section 1385, subdivision (a), provides in relevant part: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes." Without a statement of reasons

13

in the minutes, there is no effective order under section 1385.  (*Romero*, *supra*, 13 Cal.4th at p. 524; *People v. Orin* (1975) 13 Cal.3d 937, 944.)

Consequently, as in *Romero*, we remand the matter for the trial court to set forth in writing in the minutes its reasons for denying Purdie's motion to strike.  Once completed, the written statement of reasons will be subject to appellate review.  (*People v. Superior Court (Pipkin)* (1997) 59 Cal.App.4th 1470, 1478.)  In addition, the trial court is directed to make express findings on the truth of Purdie's prior convictions and record them in the minutes.

## DISPOSITION

The judgment is affirmed.  The matter remanded for the trial court to state its reasons for denying Purdie's *Romero* motion in the minutes, and to make and record express findings on the truth of his prior convictions.  The clerk of the San Bernardino Superior court is directed to record these findings and correct the abstract of judgment accordingly.  The new abstract of judgment shall be forwarded to the Department of Corrections and Rehabilitation.

THOMPSON, J.

WE CONCUR:

O'LEARY, P. J.

RYLAARSDAM, J.

14