[No. C017350. Third Dist. Sept. 7, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM HENRY DeROUEN, Defendant and Appellant.

## COUNSEL

George A. Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael Weinberger and Timothy L. Rieger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

RAYE, J.—On March 4, 1993, defendant William Henry DeRouen burglarized two vacation homes, two trailers and a shed in Calaveras County. He was convicted of four counts of first degree burglary, one count of second degree burglary, and one count of receiving stolen property. On appeal, he contends there was insufficient evidence the vacation homes or trailers were "inhabited dwellings" to support the convictions for first degree burglary (Pen. Code, §§ 459, 460) and no evidence property was taken from the shed to support the second degree burglary conviction. He also objects to the imposition of a restitution fine without a determination he had the ability to pay.

### FACTS

We provide the requisite synopsis of the evidence under the established rules governing the scope of our review when a challenge is made to the sufficiency of the evidence. ■ " 'When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. [Citations.]' " (*People* v. *Hernandez* (1992) 9 Cal.App.4th 438, 441 [11 Cal.Rptr.2d 739].)

In February 1993 several homes on Armstrong Road were burglarized. Many of these homes or trailers are used by the owners as second homes or vacation homes.

Carl Johnston owns one of the vacation homes on Armstrong Road. Portable generators, chain saws, a rifle, a television, clothing and many other items had been stolen during the February burglary of his home. At approximately 1:30 a.m. on March 4 he was awakened when he heard a U-Haul trailer pull onto his street. He dressed. Armed, he and his son interrupted the burglary of his neighbor's trailers. He apprehended one of the intruders, James Cavender, and shot his brother, Lester Lenard. He found defendant's blue Camaro parked down the road, noticed some of his missing property

inside the car and disabled it by puncturing two tires. One of Johnston's jackets was later found in the cab of the U-Haul van with "Blazer Bill" written on the collar. Defendant owns a Chevrolet Blazer and a short form of his name is Bill.

Dale Lenz owns one large, two small trailers, and a shed on Armstrong Road. He lives in the larger trailer when he stays in Calaveras; he takes the smaller trailers when he goes hunting or fishing and he has a second residence in Modesto. In the February burglary the thieves took property valued in excess of $5,000 he has been unable to replace.

Howard Edwards also owns a second home or a vacation home on Armstrong Road. In the March string of burglaries, over 200 items were taken from his house, including an antique, 800-pound piano, a motorcycle, a satellite dish, furniture and a sentimental hope chest. A shoe print from one of defendant's shoes was found on one of Edwards's tables. Much of the stolen property was recovered from the U-Haul van.

Investigating police officers found defendant at his father's vacation home on Armstrong Road about 8 a.m. on March 4. He had a cooler with "Blazer Bill" inscribed on it. Defendant testified he did not commit any of the burglaries. He claimed he was camping on his father's property the night of March 3, 1993, and had parked his car down the road because it "might bottom out" before reaching the property. He testified he had met Cavender once in Stockton but had not invited him to Calaveras nor was he aware he was in the vicinity. He had never met Lenard until Lenard appeared on the property injured about 8:30 a.m. Defendant purportedly bandaged the wound and went back to sleep. When he was awakened by his girlfriend around noon, Lenard, although a stranger, was still there. He stated the radio lantern, unusual ammunition, jacket and jumper cables were his, not the victim's.

The jury deliberated for an hour and returned guilty verdicts on all counts. Defendant was sentenced to state prison and ordered to pay restitution. He appeals.

DISCUSSION

I.

In an affront to our common sense, defendant argues there was insufficient evidence the victims' residences were "inhabited dwellings" within the meaning of Penal Code sections 459 and 460 because the vacation homes or second homes were not the victims' "regular, primary living

quarters." He contends they were not "dwellings" because no one lived there at the time of the commission of the offense and they were not "inhabited" because there was no testimony any of the victims intended to return to the homes for more than an overnight visit in the future.

■ Only the burglary of inhabited dwellings constitutes burglary in the first degree, a serious crime meant to protect important societal policies. (*People* v. *Cardona* (1983) 142 Cal.App.3d 481, 483 [191 Cal.Rptr. 109]; *People* v. *Guthrie* (1983) 144 Cal.App.3d 832, 847 [193 Cal.Rptr. 54].) " 'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence.' " (*People* v. *Thomas* (1991) 235 Cal.App.3d 899, 906 [1 Cal.Rptr.2d 434].) "In addition, a burglary of an inhabited dwelling involves an invasion of perhaps the most secret zone of privacy, the place where trinkets, mementos, heirlooms, and the other stuff of personal history are kept. Society therefore has an important interest in seeing to it that burglars stay out of inhabited dwelling houses." (*People* v. *Guthrie, supra,* 144 Cal.App.3d at p. 847, fn. omitted.)

Consequently, the distinction between an inhabited and uninhabited dwelling is pivotal in the law of burglary. According to section 460 of the Penal Code, an inhabited dwelling house "means a structure where people ordinarily live and which is currently being used for dwelling purposes. [Citation.] A place is an inhabited dwelling if a person with possessory rights uses the place as sleeping quarters intending to continue doing so in the future." (*People* v. *Fleetwood* (1985) 171 Cal.App.3d 982, 987 [217 Cal.Rptr. 612].)

"Penal Code section 459 clearly states a house remains 'inhabited' despite the fact it is empty at the time of the burglary. Furthermore, a house remains inhabited even if the burglary occurs while the residents are away for an extended period of time." (*People* v. *Cardona, supra,* 142 Cal.App.3d at p. 483.) "[N]either section 459 nor section 460 contains any requirement that a defendant have knowledge that a dwelling house is inhabited in order to commit the crime of first degree burglary." (*People* v. *Guthrie, supra,* 144 Cal.App.3d at p. 847.) Moreover, "[w]here a dwelling was previously inhabited, it does not become 'uninhabited' . . . until the residents leave never again intending to return to use the dwelling as sleeping quarters." (*People* v. *Jackson* (1992) 6 Cal.App.4th 1185, 1189 [8 Cal.Rptr.2d 239].)

The " ' "inhabited-uninhabited" dichotomy turns not on the immediate presence or absence of some person but rather on the character of the use of

the building.' " (*People* v. *Marquez* (1983) 143 Cal.App.3d 797, 801 [192 Cal.Rptr. 193].) "[T]he proper question is whether *the nature of a structure's composition* is such that a reasonable person would expect some protection from unauthorized intrusion." (*People* v. *Brown* (1992) 6 Cal.App.4th 1489, 1496 [8 Cal.Rptr.2d 513].)

 As this case vividly illustrates, the societal interests present in one's second or vacation home are equally as important as those present in one's primary residence. Each of the victims testified they resided in their Armstrong Road residences sporadically. The potential danger of an unexpected intruder into these dwellings, surprising the occupants and inciting violence is the same potential danger a burglar poses to occupants of their primary residence. The seriousness of the crime does not turn on the fortuity of whether the occupant chose one home or the other on a particular day. The hundreds of items taken from the Edwardses' vacation home included the victim's mother's antique piano and his wife's hope chest she had treasured since she was 12. Presumably safe within the "most secret zone of privacy" these are the very heirlooms, mementos, and items of personal history we spoke of in *People* v. *Guthrie, supra*, 144 Cal.App.3d at page 847. As we acknowledged in *Brown*, the reasonable expectation of the occupant in protection from unauthorized intrusions is determinative. We conclude the occupant of a vacation home reasonably expects the same protection from unauthorized intrusions as the occupant of any other residence. There was ample evidence to support the jury's findings the vacation or second homes were inhabited dwellings to sustain defendant's convictions for multiple burglaries in the first degree.

## II.

 Defendant also contends there was no evidence to support a conviction of second degree burglary of a shed. He belatedly attempts to take advantage of an unexplained, but mistaken, interlineation in the information describing the Edwardses' rather than the Lenzes' shed.

One of the counts of the original information accused defendant of unlawfully entering a shed belonging to Dale Lenz with the intent to commit the crime of theft therein, burglary in the second degree. When the court made its findings at the end of the preliminary hearing, it mistakenly referred to both the Edwardses' and Lenzes' sheds. Defendant was bound over on "an attempted second-degree burglary as to the Lenz shed." The information, however, contains an interlineation striking "Dale Lenz" and inserting "Howard Edwards" as the owner of the shed. The verdict form properly refers to Dale Lenz and all the testimony at trial referred to the shed belonging to Lenz, not Edwards.

Hence, we conclude defendant was on notice he was charged with the attempted burglary of the Lenzes' shed from the court's express findings at the preliminary hearing. There was more than sufficient evidence to support a conviction of attempted second degree burglary, and the jury verdict form properly described Lenz as the owner of the shed. Defendant is too late to be heard to complain about the interlineation. He was properly on notice of the charges against him and he was properly convicted as charged. He waived any other procedural defects.

## III.

We mention briefly a few remaining housekeeping matters. The Attorney General concedes defendant cannot be punished for burglary and receiving the same stolen property during the burglary. The Attorney General urges us, however, not to reverse the conviction for receiving stolen property but to stay defendant's sentence. (*People* v. *Bernal* (1994) 22 Cal.App.4th 1455, 1457-1458 [27 Cal.Rptr.2d 839].) We rejected the same argument nearly 10 years ago in *People* v. *Stewart* (1986) 185 Cal.App.3d 197, 203, fn. 2 [229 Cal.Rptr. 445]. Since the Supreme Court has not dictated a different remedy in the ensuing decade since our opinion, "[u]nder principles of stare decisis we will not reconsider these decisions at this late date." (*Ibid.*) Since the defendant cannot be convicted of receiving property which he stole, the receiving stolen property conviction must be reversed.

Finally, defendant objects to the imposition of a restitution fine in the absence of an express finding by the trial court that he had the ability to pay the fine. "[B]y virtue of his failure to object in the trial court, defendant has waived his right to contest the restitution fine on appeal." (*People* v. *Gibson* (1994) 27 Cal.App.4th 1466, 1468 [33 Cal.Rptr.2d 217].)

Defendant's conviction of receiving stolen property is reversed. In all other respects, the judgment is affirmed.

Blease, Acting P. J., and Nicholson, J., concurred.