Filed 5/14/14  P. v.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B247240 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA391120) |
| v. | |
| IGNACIO VILLALOBOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Affirmed.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Linda C. Johnson, Supervising Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant appeals his conviction of one count of first degree residential burglary (Pen. Code, § 459),[1] contending there was insufficient evidence the residence was occupied and seeks reduction of his conviction to second degree burglary.  We affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Guadalupe Rodarte is defendant's cousin.  In early 2011, defendant lived with Rodarte for about six months.  Defendant left on bad terms and Rodarte told him never to come back, although at one time Rodarte had told defendant that "my house is your house."

Rodarte kept her back door unlocked.  On November 19, 2011, she left at 7:00 a.m. or 8:00 a.m. to go to work.  After work, she went to a friend's house about 20 miles from where she lived.  Rodarte received a phone call about 9:30 p.m. from her neighbors that someone was in her house; they saw a flashlight and someone going through the kitchen cupboards.  Rodarte asked her neighbors to call police.  Later, Rodarte received a phone call from her next-door neighbor that someone was in Rodarte's house.  When she arrived at her house, she saw police officers outside.  Police officers showed her a box containing items that belonged to Rodarte:  several bottles of liquor, a laptop, a hand drill and an iPod.  Most of the items Rodarte had left on the kitchen countertop, but the iPod she left on a work table in the living room where she normally stored it.

Rodarte's house was empty because she was in the process of a remodeling project that had been ongoing for five or six years.  The house did not have any furniture, although Rodarte still lived at the residence.  She slept there at night and referred to herself as a "camper."

Officer Ruben Zabala responded to Rodarte's house.  He observed a gold Chevy Silvarado parked across the street from Rodarte's house.  He saw a flashlight beam inside Rodarte's house, and went to the house next door to observe.  When defendant walked out of the front door of Rodarte's house, Officer Zabala ordered defendant to get down

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

2

on the ground. Defendant refused, stating that the house was defendant's cousin's house. Defendant put the box on the porch and got down on his knees.

Defendant was charged with two counts of residential burglary (§ 459) arising out of two separate incidents. Count 1 charged defendant with first degree residential burglary of the Rodarte residence, and count 2 charged defendant with first degree residential burglary of Susan Hernandez's residence. The jury convicted defendant on count 1 and acquitted him on count 2.

In a bifurcated hearing, defendant admitted he had sustained three prior convictions that qualified as strikes pursuant to sections 1170.12, subdivisions (a)–(d), and 667, subdivisions (b)–(i); that these three priors were also serious felonies within the meaning of section 667, subdivision (a)(1); and any sentence in this case would be served in prison as required under section 1170, subdivision (h)(3). On defendant's motion to strike, the trial court struck two of the three strike priors. The trial court sentenced defendant to a total of 27 years, consisting of six years for the first degree residential burglary, six years for the strike prior, and five years for each of the three prior serious felonies.

## DISCUSSION

Defendant argues that there is insufficient evidence the Rodarte home was "inhabited" for purposes of the burglary statute, which defines inhabited as "currently being used for dwelling purposes, whether occupied or not." (§ 459.) Although no court has explicitly defined "dwelling purposes," defendant contends the factors used include whether the dwelling is used for sleep, and the inhabited-uninhabited nature of the dwelling turns not on the immediate presence or absence of some person but rather on the character of use of the building. In addition, he points out that courts consider the intent of the owner/occupant, namely, whether that owner/occupant intends to occupy the dwelling in the future. Here, he argues, Rodarte did not use the home as a dwelling because she kept no personal items therein to indicate she considered her house private;

3

the residence was an empty shell being remodeled and thus more like a house under construction. We disagree.

By statute, "[e]very burglary of an inhabited dwelling house, . . . or the inhabited portion of any other building, is burglary of the first degree." (§ 460, subd. (a).) "All other kinds of burglary are of the second degree." (*Id.*, subd. (b).) The term "inhabited" is statutorily defined as "currently being used for dwelling purposes, whether occupied or not." (§ 459.) Courts have construed the terms "residence" and "inhabited dwelling house" to have equivalent meanings. (*People v. Thomas* (1991) 235 Cal.App.3d 899, 907.)

The fact that a dwelling is not the regular residence of its occupants is not dispositive. Vacation homes and second homes remain inhabited even where they are used sporadically by their residents. (*People v. DeRouen* (1995) 38 Cal.App.4th 86, 90–92, disapproved on other grounds in *People v. Allen* (1999) 21 Cal.4th 846, 864–866.) A house "remains inhabited even if the burglary occurs while the residents are away for an extended period of time." (*People v. Cardona* (1983) 142 Cal.App.3d 481, 483.) "A structure that was once used for dwelling purposes is no longer inhabited when its occupants permanently cease using it as living quarters, and no other person is using it as living quarters." (*People v. Rodriguez* (2004) 122 Cal.App.4th 121, 132.)

"Just as we look to the intent of the intruder at the time of entry in determining whether the crime of burglary was committed, so must we look to the intent of the occupier or person entitled to occupy the dwelling to determine if it is inhabited within the meaning of Penal Code section 459." (*People v. Marquez* (1983) 143 Cal.App.3d 797, 801.) Thus, in *People v. Hernandez* (1992) 9 Cal.App.4th 438, 442, an apartment was inhabited where the new tenants had moved their belongings into the apartment intending to occupy it as their residence even though they had not yet slept there.

Applying these principles here, Rodarte's home was occupied for purposes of the burglary statutes. Defendant focuses excessively on the lack of furnishings and state of construction in Rodarte's house, instead of acknowledging that Rodarte slept there

4

regularly (in her terms, "camping" due to the lack of furnishings) and kept small personal items there (computer, iPod, liquor).  These latter factors establish that the home was "inhabited" because Rodarte used the house as a place regularly to sleep and store her personal items.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.


5