Filed 2/20/15  P. v. Garcia CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

### (San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C072905 |
| Plaintiff and Respondent, | (Super. Ct. No. SF120862A) |
| v. | |
| FEDERICO MIGUEL GARCIA, | |
| Defendant and Appellant. | |

Defendant Federico Miguel Garcia appeals his residential burglary conviction, contending (1) the trial court erred in denying his motion for an acquittal because the prosecution produced insufficient evidence the house was inhabited; (2) there is insufficient evidence the burglarized house was inhabited to warrant a finding of *first degree* burglary; and (3) the trial court erred in instructing the jury to consider the minor occupant's subjective beliefs in determining whether the house was inhabited.  The People disagree and further contend the trial court erred in imposing concurrent instead of consecutive terms for two of defendant's prior prison enhancements.

1

We conclude (1) substantial evidence supports the jury's verdict; (2) the trial court did not err in denying defendant's motion for an acquittal; and (3) the trial court did not commit instructional error; but (4) the trial court did err in imposing concurrent sentences on the enhancements without stating any basis for that departure from the sentencing scheme. Therefore, we remand the matter to the trial court for resentencing as to the enhancements, and we otherwise affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The house in question here was the residence of D.S. (a minor), her mother, and her brother, until her mother became incarcerated at the end of May 2012. The house was a rental, was fully furnished, and had functioning utilities. When her mother became incarcerated, D.S. went to live with her father in the Bay Area. D.S. still considered the house her home, and she and her mother planned to return to the house when her mother was released. Her brother was not living there but all of his belongings were in the house. D.S. continued to check on the house and collect the mail periodically after her mother's incarceration. No one had paid rent or utility bills for the house since her mother's incarceration, but D.S. had communicated with the landlord.

On July 5, 2012, when D.S. was checking on the house, she noticed some fence boards had been removed and her brother's speaker was unexpectedly outside. She walked through the opening in the fence and noticed that the sliding door to her mother's room in the back of the house was open. She had been at the house approximately two weeks earlier, and the house had been secure when she left. When she walked through the sliding door into the house, she saw defendant and a woman in her mother's room. The woman had a plastic bag with D.S.'s mother's clothes in it and she was packing the mother's CD's into the bag as well. Defendant had a full backpack, though D.S. did not see him place anything in the backpack. D.S. was scared because no one was supposed to be in the house and no one had permission to take anything from it.

2

D.S. asked defendant and the woman what they were doing there. Defendant said someone had sent him, and then he and the woman walked out, leaving through the opening in the fence. D.S. yelled for her father, who was waiting in front of the house. At that point, D.S. saw defendant begin to run away. She called the police, who responded within minutes and found defendant walking less than a half-mile away. D.S. identified the bath towels and rosary found in defendant's backpack as coming from the house. The rosary was hers and had been in her mother's room, and the towels had been stored in the hall closet.

D.S. described the general state of the house on July 5 as "destroyed"—there were clothes everywhere, with drawers left open. The lights were not working and she did not check whether the water was working. It appeared people were living in the house—there were beer cans, wrappers, and junk strewn about. After the July 5 incident, D.S. had spoken with her mother, and they had decided not to rent the house any longer. On cross-examination, D.S. acknowledged it was her mother's decision whether they would continue to rent the house when her mother was released, that her mother was the tenant identified in the lease agreement, and that her mother paid the rent and bills.

The officer who responded to the 911 call and spoke with D.S. at the house testified she had told him she was in the process of moving out. D.S. denied telling the officer she was moving out. Officers also reported that defendant told them he had not broken into the house, but that the back door was open and he had heard no one was living there. He also told them he had been in the house about 20 minutes when D.S. arrived. Defendant had taken the towels "because he needed them."

After the People rested, defendant moved for a judgment of acquittal pursuant to Penal Code section 1118.1[1] on the grounds that (1) there was no evidence of felonious

---

[1] Undesignated statutory references are to the Penal Code.

intent as defendant had been in the house 20 minutes when D.S. arrived; he did not know anyone was living in the house; he left when the homeowner arrived; and there was no testimony from D.S.'s mother, who could have provided consent for someone to enter the house and was the "actual victim"; (2) there was no evidence of mother's intent to return and it was not D.S.'s decision whether to return; and (3) the house was not inhabitable. The People argued the house need not be habitable; it is the victim's intent that is relevant to determining whether the house is inhabited; and there are sufficient facts to support a burglary conviction. The trial court denied defendant's motion, finding substantial evidence to support a burglary conviction because defendant was inside the house; his accomplice was stuffing things inside a purse; defendant took items from the house; and it is the resident's intent that determines whether the house is "inhabited." The trial court also found that D.S.'s status as a minor did not preclude her from testifying as to the family's intent, and the fact the family was not paying rent is not determinative; D.S. testified it was their residence, their furniture was there, and there was evidence "they were planning to come back to the house."

Thereafter, defendant testified he was homeless and unemployed on July 5, 2012. This was the third time he had been to the house, and each time he had entered through the rear sliding door. He had first been there three or four days earlier to rest and drink some beer. He had heard from someone on the streets that people were "hanging out" there. He returned a couple of days later and spent the night. A lot of people were coming and going. He returned again on July 5, 2012, to rest because it was hot outside and he was tired. He had been at the house for about 20 minutes when D.S. arrived. He wanted to bathe, but the shower was not working, so he took the towels to take a "bird bath" elsewhere. He had not taken anything from the house on his prior visits and noted the house appeared "ransacked." He had just met the woman D.S. saw at the house that day and did not know her previously. He found the rosary on the ground in the backyard

4

and took it because he liked it. He admitted he did not have permission to be in the house and knew the towels and rosary were not his.

The jury was instructed with CALCRIM No. 1701 that "First degree burglary is the burglary of an inhabited house. A house is inhabited if someone uses it as a dwelling, whether or not someone is inside at the time of the alleged entry. A house is not inhabited if the former residents have moved out and do not intend to return, even though some personal property remains inside." And "The People have the burden of proving beyond a reasonable doubt that the burglary was first degree burglary. If the People have not met this burden, you must find the defendant not guilty of first degree burglary."

The court also provided an "additional instruction," saying, "[T]o determine whether or not the house is inhabited, you must look at [D.S.'s] purpose for the house such as, (1) Did she view the house as her dwelling place on the date of the alleged crime? [and] (2) did she intend to return to her house to live? Whether or not a house is inhabited does not change because the occupants of the house are away for an extended period of time. The subjective impression of the defendant as to whether the house is inhabited or uninhabited is not relevant and not to be considered in deciding whether or not the house is inhabited or uninhabited."

The jury was released to deliberate on October 11, 2012. The following morning the jury requested a readback of defendant's testimony regarding why he had gone to the house previously, and asked for "additional clarity of the definition 'reasonable' " provided in CALCRIM No. 225 regarding circumstantial evidence of a defendant's intent or mental state. The court answered the jury's question as follows: "The term 'reasonable' as used in the instruction [regarding circumstantial evidence] has the same meaning as used in the burden of proof instruction . . . . Please refer to that for a further definition."

5

That afternoon the jury found defendant guilty of first degree burglary.  (§ 459.)
The trial court also found true three of the six prior prison enhancement allegations.
(§ 667.5, subd. (b) (hereafter section 667.5(b).)  Defendant was sentenced to an aggregate
term of five years—the middle term of four years for the burglary, a consecutive one-year
term for one of the prior prison enhancements, and concurrent one-year terms for each of
the other two prior prison enhancements.

## DISCUSSION

### I.  Sufficiency of the Evidence

Defendant does not dispute that he burglarized the residence in question, but
contends there is insufficient evidence the residence was inhabited to warrant a finding
that the burglary was of the first degree.  Defendant claims D.S.'s intent to return is
irrelevant and insufficient because she is a minor, and that only D.S.'s mother, the tenant
identified on the lease and thus the "person with the possessory right to the house," could
establish evidence of intent to return necessary to render the house inhabited.  He also
asserts that rent not being paid and the electricity and water not working is evidence that
the house was not inhabited.  We conclude D.S. could and did provide substantial
evidence of the family's intent to return to the house to render it inhabited for purposes of
the burglary statutes.

### A.  *Law*

"[B]urglary of an inhabited dwelling house . . . is burglary of the first degree."
(§ 460, subd. (a).)  For our purposes, " 'inhabited' means currently being used for
dwelling purposes, whether occupied or not."  (§ 459.)  This term has been interpreted
broadly to achieve the legislative purpose of providing increased protection for one's
home.  (*People v. Aguilar* (2010) 181 Cal.App.4th 966, 970 (*Aguilar*).)  The societal
interests involved in protecting an inhabited dwelling include (1) the potential danger that
an unexpected intruder will harm the occupants or will be harmed by occupants reacting

6

violently to the invasion and (2) the " 'most secret zone of privacy' " where people store their personal belongings, heirlooms and mementos. (*People v. DeRouen* (1995) 38 Cal.App.4th 86, 91 (*DeRouen*), overruled on other grounds by *People v. Allen* (1999) 21 Cal.4th 846, 864.)

To determine whether a house is inhabited, "we look to the intent of the occupier . . . ." (*People v. Marquez* (1983) 143 Cal.App.3d 797, 801 (*Marquez*).) "[A] house remains inhabited even if the burglary occurs while the residents are away for an extended period of time." (*People v. Cardona* (1983) 142 Cal.App.3d 481, 483 (*Cardona*); see *Marquez*, *supra*, 143 Cal.App.3d at pp. 800, 802 [house is inhabited because the house was maintained as a residence and there was no evidence the resident, or her conservators on her behalf, had vacated or abandoned the house to live somewhere else, even though the resident who was under a conservatorship had moved to a boarding house as much as two and half years earlier and there was a doubt whether she would return]; *People v. Meredith* (2009) 174 Cal.App.4th 1257, 1260, 1268 (*Meredith*) [aged occupant was hospitalized for multiple months, then moved to a skilled nursing facility, and possibly even removed from life support shortly before burglary, but his home was still inhabited because he expressed desire to maintain the house and to keep it as is because he planned to return]; *DeRouen*, *supra*, 38 Cal.App.4th 86, 92 [a vacation or second home is inhabited even where it is resided in only "sporadically" but is used to store some heirlooms and mementos].) And, a previously inhabited dwelling " 'does not become "uninhabited" . . . until the residents leave never again intending to return to use the dwelling as sleeping quarters.' " (*DeRouen, supra*, at p. 91; see *Aguilar, supra*, 181 Cal.App.4th at pp. 971-972 [where man is forced to relocate to a hotel following a severely damaging apartment fire, but believes he will return to live in the apartment once it is fixed, the apartment remains inhabited, even if the man learns after the burglary that he will not be able to return].)

Whether a house was inhabited is a question of fact. (*People v. Burkett* (2013) 220 Cal.App.4th 572, 582.) In reviewing a defendant's challenge to the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence. Substantial evidence is evidence that is credible, reasonable, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 (*Rodriguez*).) We do not reassess the credibility of witnesses, and we draw all inferences from the evidence that support the jury's verdict. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.) Unless it is physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

### *B. Analysis*

Initially, we reject defendant's assertion that only homeowners or tenants (and not occupants) may provide evidence whether a residence is inhabited because only they have "possessory rights." In support of this contention, defendant cites *People v. Hughes* (2002) 27 Cal.4th 287, *Meredith, supra*, 181 Cal.App.4th 966, *People v. Villalobos* (2006) 145 Cal.App.4th 310, *DeRouen*, *supra*, 38 Cal.App.4th 86, *Marquez*, *supra*, 143 Cal.App.3d 797, and *Cardona*, *supra*, 142 Cal.App.3d 481. Though these cases involved owners or tenants as victims of first degree burglary, the cases did not address whether someone without such a possessory right could inhabit a residence, and "cases are not authority for propositions not considered." (*People v. Brown* (2012) 54 Cal.4th 314, 330.)

Moreover, contrary authority establishes that an occupant who is neither an owner nor a tenant may provide evidence to render a residence inhabited. In *People v. Rojos* (1995) 31 Cal.App.4th 611 (*Rojos*), the victim was living in a cabin owned by others and there was substantial evidence she was there without their permission. (*Id.* at pp. 612,

8

614-615.) Nonetheless, the court rejected the defendant's contention that he was not guilty of *first degree burglary* because it found "that the 'inhabited building' distinction between first and second degree burglary is designed to protect the personal safety of the 'inhabitants,' " regardless of whether the inhabitant was a squatter or trespasser who had no possessory right to the cabin. (*Rojos*, at pp. 614-615.) Also, in *People v. Sparks* (2002) 28 Cal.4th 71, 87 (*Sparks*), the court found a defendant had committed first degree burglary when he entered the *bedroom* of the 22-year-old victim living as an occupant in her family's home, even though the defendant had entered the *house* without felonious intent. Therefore, a victim need not be a tenant or owner to render a residence inhabited for purposes of the burglary statutes.

We also reject defendant's assertion that as a minor D.S. could not and did not provide evidence of intent to return to the dwelling because she did not have the legal right to decide where to live. The instant situation is analogous to that posed in *Marquez*, *supra*, 143 Cal.App.3d 797. There, the resident of the house was under a conservatorship and had been moved by her conservators to a boarding house, where she had been confined for nearly two and a half years prior to the burglary. (*Id.* at pp. 799-800.) Nonetheless, the court concluded that she was "only temporarily absent" and that the house was not "*permanently* unoccupied" because she left her belongings in the house and had someone check on and maintain the house regularly. (*Id.* at p. 800.) Based on those facts, the court concluded there was substantial evidence that the house was inhabited for purposes of the burglary statutes. (*Id.* at p. 802.) In the same way that a minor cannot legally decide where to live (see Fam. Code, § 7050, subd. (e)(15)), so too a conservatee lacks the legal right to decide where to reside. (See Prob. Code, § 2352, subd. (b) ["The conservator may establish the residence of the conservatee at any place within this state without the permission of the court"].) Based upon their similar legal constraints, we see no reason to distinguish between a conservatee and a minor with

9

respect to their ability to provide evidence of an intent to return for purposes of establishing that a home is inhabited.

Moreover, there is no question that D.S.'s mother could establish an intent to return, even if that return was doubtful. (See *Marquez*, *supra*, 143 Cal.App.3d at pp. 800, 802.) Here, D.S. testified not only that she intended to return to live in the house but that her mother also intended to return.[2] Thus, there was ample evidence of the family's intent to return to live in the house to support a finding that the house was inhabited.

Finally, we reject defendant's assertion that the mother's incarcerated status, and the fact that no one was paying rent, electricity or water for the house at the time of the burglary is decisive. Though those facts may support a finding that the house was not inhabited, D.S. also testified the family's belongings remained in the house, that she regularly maintained and secured the house while temporarily living with her father, and communicated with the landlord about their intent to stay and their subsequent decision to vacate the house following the burglary. This testimony, coupled with D.S.'s testimony of the family's intent to return, is "evidence that is reasonable, credible, and of solid value" to warrant a finding that the house was inhabited for purposes of finding defendant guilty beyond a reasonable doubt of first degree burglary. (*Rodriguez*, *supra*, 20 Cal.4th at p. 11.) Thus, substantial evidence supports the jury's verdict, and we will

---

[2] Defendant asserts that D.S.'s testimony of her mother's intent was objected to as hearsay. We disagree. Defense counsel did not object to D.S.'s testimony of her mother's intent but to her recounting that information to the landlord so "[h]e knew what was going on," and that objection was properly overruled. (See *People v. Scalzi* (1981) 126 Cal.App.3d 901, 907 [an out-of-court statement is not hearsay when it is entered for the purpose of showing the effect on the listener, and not for the truth of the matter asserted].) Failure to raise a hearsay objection at trial forfeits the objection on appeal. (*People v. Eubanks* (2011) 53 Cal.4th 110, 142.) Therefore, evidence of the mother's intent to return to the house was before the jury.

not reweigh the evidence (*People v. Alexander* (2010) 49 Cal.4th 846, 883) to supplant the jury's finding that the house was inhabited.

## II.  Motion for Judgment of Acquittal

Defendant contends the trial court erred in denying his motion for a judgment of acquittal pursuant to section 1118.1 because there was insufficient evidence the house was inhabited.  A motion for judgment of acquittal shall be granted "if the evidence . . . before the court is insufficient to sustain a conviction of such offense or offenses on appeal."  (§ 1118.1.)  The trial court applies the same standard in ruling upon a section 1118.1 motion as we do in reviewing a claim of insufficient evidence, i.e., "whether from the evidence including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged."  (*People v. Huggins* (1997) 51 Cal.App.4th 1654, 1656.)  At the time defendant's motion was made, D.S. had already testified to establish that the house was inhabited.  Therefore, as we concluded above, there was substantial evidence to support a finding the house was inhabited.  Accordingly, the trial court did not err in denying defendant's motion for an acquittal.

## III.  Instructional Error

Defendant contends the court's additional instruction to consider D.S.'s subjective feelings in deciding whether the house was inhabited (1) is premised on an incorrect legal theory because a minor occupant cannot, as a matter of law, establish whether a house is inhabited because she does not have a possessory interest and cannot make legal decisions as to whether she will return to live in the house; (2) is misleading and ambiguous because it requires the jury consider only D.S.'s subjective beliefs and not any objective factors; and (3) unfairly credits D.S.'s testimony as credible due to the inclusion of mandatory language, thereby usurping the jury's function as arbiter of credibility.  We conclude there was no instructional error.

11

"In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys. The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights. In making this determination we consider the specific language under challenge and, if necessary, the instructions as a whole." (*People v. Andrade* (2000) 85 Cal.App.4th 579, 585.)

We first address defendant's contention that a minor occupant cannot, as a matter of law, establish that a house is inhabited. We already rejected defendant's contention that an occupant cannot establish that a house is inhabited. (See *Rojos*, *supra*, 31 Cal.App.4th at pp. 614-15; see also *Sparks*, *supra*, 28 Cal.4th at p. 87.) So too, we rejected the contention that a minor, merely based on her lack of a legal right to decide where to live, cannot provide evidence of an intent to return to live in a house for purposes of establishing that it was inhabited for purposes of the burglary statutes. (Cf. Prob. Code, § 2352, subd. (b) [conservator decides where conservatee will live]; *Marquez, supra,* 143 Cal.App.3d at pp. 800, 802 [burglarized house was inhabited because conservatee intended to return].) Therefore, the instruction was not based upon an incorrect legal theory; a minor occupant can provide evidence of intent to return to support a finding that a house was inhabited.

We also reject defendant's contention that the instruction was misleading and ambiguous because it requires the jury to consider only D.S.'s subjective beliefs and not objective factors. As noted above, the dispositive issue in determining whether a burglarized house is inhabited is the subjective intent of its occupants. This concept is articulated in standard instruction CALCRIM No. 1701, which the court also provided to the jury and which states, "[f]irst degree burglary is the burglary of an inhabited house," "[a] house is *inhabited* if someone uses it as a dwelling, whether or not someone is inside at the time of the alleged entry," and "[a] house is not *inhabited* if the former residents

12

have moved out and do not intend to return, even if some personal property remains
 . . . ." The two questions posed by the additional instruction to assess D.S.'s intent to return0 to the house, introduced by "such as," were properly focused on D.S.'s subjective beliefs. The instruction did not preclude the jury from also considering the objective factors, i.e., the lack of functioning utilities and the lack of rent, in determining whether the house was inhabited. Thus, the additional instruction is not misleading or ambiguous.

Finally, we reject defendant's contention that the use of the term "must" in the additional instruction unfairly credits D.S.'s testimony as credible thereby usurping the jury's function as arbiter of credibility. The instruction began, "[T]o determine whether or not the house is inhabited you *must* look at [D.S.]'s purpose for the house. . . ." (Emphasis added.) However, the jury was also instructed, pursuant to CALCRIM No. 226, that it is within the jury's province alone to assess the credibility of witnesses.[3] We do not find these two instructions to be in conflict, and we assume the jury properly follows all instructions. (*People v. Holt* (1997) 15 Cal.4th 619, 662 ["Jurors are presumed to understand and follow the court's instructions"].) By directing the jury to look at D.S.'s purpose for the house in deciding whether the house was inhabited, the court did not direct the jury that it had to believe the evidence D.S. provided in the regard. Therefore, we do not find the additional instruction unfairly credits D.S.'s testimony.

Accordingly, we do not find the trial court committed instructional error in providing the additional instruction to the jury.

---

[3] CALCRIM No. 226 reads, in pertinent part, "You alone must judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience. You must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have. You may believe all, part, or none of any witness's testimony. Consider the testimony of each witness and decide how much of it you believe."

## IV. Sentencing Error

The People contend the trial court erred in imposing concurrent as opposed to consecutive sentences for defendant's prior prison term enhancements pursuant to section 667.5(b).[4] We agree that section 667.5(b) mandates consecutive one-year terms for each prior prison enhancement allegation found true.[5] And, the trial court did not articulate any circumstances in mitigation to warrant striking any of the prior prison terms. (See § 1385; *People v. Orin* (1975) 13 Cal.3d 937, 944-945.) Therefore, we must vacate the sentence and remand the matter to the trial court for resentencing. (*People v. Savedra* (1993) 15 Cal.App.4th 738, 747.) On remand, the trial court must either strike the prior prison enhancements and state reasons for doing so, or impose the enhancements consecutively.

## DISPOSITION

Defendant's sentence is vacated and the matter is remanded to the trial court to either strike the prior prison term enhancements or impose them consecutively. In all other respects, the judgment is affirmed.

                                        BUTZ_____, J.

We concur:

_____RAYE_____, P. J.

_____BLEASE_____, J.

---

[4] Apparently, defendant does not contest this claim as he does not address it in his reply brief.

[5] Section 667.5(b) provides in pertinent part that, where a defendant is convicted of a felony offense and a prison or section 1170, subdivision (h) county jail sentence is imposed, "in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 . . . ."