Filed 3/20/23 P. v. Hernandez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078556 |
| v. | (Super.Ct.No. FSB19001842) |
| SAMANTHA LYNETTE HERNANDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Harold T. Wilson, Jr., Judge. Affirmed.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Samantha Lynette Hernandez entered a mobile home in San Bernardino that belonged to Herman Medina and his wife. While defendant was inside the mobile home, Medina arrived and noticed that a window had been pried open and one of the doors was ajar. He entered the mobile home and found defendant in a bedroom, holding a pipe. She warned him that something was in the mobile home. She left carrying a bag that belonged to Medina's wife and contained items she took from the mobile home. Defendant was apprehended down the street by police and was still in possession of the bag. Defendant was also carrying a backpack, which contained a magazine loaded with rounds of nine-millimeter ammunition. Defendant was convicted of first degree burglary and unlawful possession of ammunition along with having suffered a prior serious and violent felony conviction.

Defendant claims on appeal that (1) insufficient evidence was presented to support her conviction of first degree burglary as the People failed to prove that the residence was inhabited at the time of the burglary; (2) if this court reduces her conviction to second degree burglary, the five-year term imposed on the prior serious felony conviction found true under Penal Code section 667, subdivision (a),[1] must be stricken and, in the alternative, if his court upholds her conviction of first degree burglary, the trial court abused its discretion by refusing to strike the section 667, subdivision (a), prior and it should be dismissed on appeal; her conduct credits should be recalculated if this court reduces her conviction to second degree burglary; and (4); remand for resentencing is

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

required in order for the trial court to consider the sentencing objectives of Senate Bill No. 567.

## FACTUAL AND PROCEDURAL HISTORY

### A.     PROCEDURAL HISTORY

Defendant was convicted of first degree burglary (§ 459; count 1) along with the special allegation that it was a serious and violent felony conviction because the residence was occupied (§§ 1192.7, subd. (c); 462, subd. (a); 667.5, subd. (c).)  She was also found guilty of unlawful possession of ammunition (§ 30305, subd. (a)(1); count 2.)  In a bifurcated proceeding, after defendant waived her right to a jury trial, the trial court found the special allegation true for count 1 that she had suffered a prior serious felony conviction (§§ 667, subd. (a).)  In addition, the trial court found true that defendant had suffered a serious or violent felony conviction on counts 1 and 2 pursuant to sections 667, subdivisions (b) through (i), and 1170.12, subdivision (a), and had served a prior prison term within the meaning of section 667.5, subdivision (b).

Defendant was sentenced on February 4, 2022, to the middle term of four years on count 1 plus a consecutive eight-month term on count 2.  Defendant was additionally sentenced to five years for the section 667, subdivision (a)(1), prior serious felony conviction.[2]  She received a total sentence of nine years eight months to be served in state

---

[2] The trial court struck the prior serious and/or violent felony conviction for purposes of imposing count 1 and not doubling the sentence.

3

prison.[3]  She was granted 1,139 total credits pursuant to section 2933.1, consisting of 990 actual days and 149 conduct credits.

B.    FACTUAL HISTORY

1.    *PEOPLE'S CASE-IN-CHIEF*

On May 22, 2019, Herman Medina and his wife, Collette Moore, owned a mobile home located at 2686 West Mill Street Space 138 in San Bernardino (mobile home).  The mobile home had three bedrooms and two bathrooms.  It was furnished and all of the utilities, including electricity and gas, were turned on.  Medina maintained regular trash service.  On May 22, 2019, Medina stated that he and his wife were primarily storing their items in the house because the floors had been damaged.  He stated that they were gradually moving things from the mobile home to their house in Rialto.  His son lived in the mobile home until November 2018 when the floors were damaged by a pipe that burst.  Medina's son planned to move into the mobile home once the floors were fixed.

On May 22, Medina went to the mobile home.  He had been to the mobile home just a few days prior to that day.  He had locked all of the doors when he left.  During this time in 2019, he would go to the mobile home about three times each week.  He would check on the mobile home and take the garbage out.

He arrived at the mobile home between 1:00 and 2:00 p.m.  He was just going to pick up the mail when he observed that the side door to the mobile home was ajar.  He went inside and heard a noise coming from one of the bedrooms.  When he entered one of

---

[3] The trial court struck the section 667.5, subdivision (b), prior.

4

the bedrooms, he saw defendant holding a 15-inch pipe that he recognized had been in the house. He said, "Who the 'F' are you?" Defendant responded, "There is someone in here. There's someone in here." Medina told her, "Yeah, you." Defendant told Medina that someone had invited her to stay in the mobile home.

Defendant stated that there was "something" in the mobile home. Defendant had a bag under her arm. The bag had the words Arrowhead Medical Center (AMC) printed on it. Moore had worked at AMC as a nurse and the bag belonged to her. Defendant walked past him out of the bedroom. He did not stop her because he was afraid of her strange behavior. She exited the mobile home by the side door. Medina followed her. He yelled at her to give back his items or he was going to call the police. Defendant responded that the items belonged to her.

Medina followed her down the street. Defendant flagged down a man on a bicycle. She got on the handlebars and left with him. Police officer Dimola responded to a 911 call from Medina at around 1:40 p.m. on May 22, 2019. Medina pointed to the direction that defendant had left on the bicycle. Officer Dimola observed a male Hispanic riding a bicycle with a female, identified as defendant, on the handlebars. Officer Dimola followed them. Once defendant got off the bicycle, Officer Dimola approached defendant. She was wearing black clothing and had both a black backpack and the AMC bag. Officer Dimola detained defendant. The male with defendant ran off. Medina identified defendant as the female who had been in his house.

Officer Prinz was called to Medina's mobile home at approximately 1:55 p.m. on May 22, 2019. Officer Prinz observed the window that had been damaged. A person

5

could fit through the window. Officer Dimola brought defendant's backpack and the AMC bag back to the house. Inside the backpack was a magazine for a Ruger semiautomatic firearm that was loaded with 13 rounds of nine-millimeter ammunition.

Inside the AMC bag was some of Moore's makeup. In addition, keys to a vintage motorcycle that had been in one of the kitchen drawers was in the bag. Also in the bag was a knife shaped like a gun that Moore had given Medina. It had been stored in a kitchen drawer. Moore had not put these items in the AMC bag.

Medina also found his wife's purse, which contained her jewelry, in a recycle bin outside the home. The holder for the knife found in the AMC bag was inside one of the purses. In addition, Medina's wife's checkbook was in the purse. Moore kept the purses in her bedroom. Medina did not own any guns or ammunition.

Medina looked around the mobile home after the police left. It appeared that someone had used both of the toilets but had not flushed them. He found a bag of female clothes in the laundry room that did not belong to him or Moore. There were dirty dishes in the kitchen, which had been left by Medina's son from November 2018. Medina had left them in the sink advising his son that he had to clean them.

Moore had never met defendant and did not give her permission to take any of Moore's items. Medina had not given anyone permission to enter his house. He did not give defendant permission to enter the house or take Moore's bag. The parties stipulated that defendant had suffered a prior conviction, which prohibited her from possessing ammunition.

Defendant presented no evidence on her behalf.

6

**DISCUSSION**

A.    INSUFFICIENT EVIDENCE OF FIRST DEGREE BURGLARY

Defendant contends the evidence was insufficient to support her conviction of first degree burglary as it was not proven that the house was inhabited.

" 'A substantial evidence inquiry examines the record in the light most favorable to the judgment and upholds it if the record contains reasonable, credible evidence of solid value upon which a reasonable trier of fact *could* have relied in reaching the conclusion in question. Once such evidence is found, the substantial evidence test is satisfied. [Citation.] Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding.' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 711.)

Burglary involves the act of unlawful entry accompanied by the specific "intent to commit grand or petit larceny or any felony." (§ 459.) First degree burglary requires entry into an "inhabited" dwelling house. (§ 460, subd (a).)

Here, the jury was instructed on burglary that it had to find (1) defendant entered a building/room within a building/structure; and, (2) when she entered a building/room within the building/structure, she intended to commit theft. They were further instructed, "Burglary is divided into two degrees. If you conclude that the defendant committed a burglary, you must then decide the degree. [¶] First degree burglary is burglary of an inhabited house [or a room within an inhabited house]." [¶] "A house is inhabited if someone uses it as a dwelling, whether or not someone is inside at the time of the alleged entry. [¶] A house is inhabited if someone used it as a dwelling and left only because a

7

natural or other disaster caused him or her to leave. [¶] A house is not inhabited if the former residents have moved out and do not intend to return, even if some personal property remains inside. [¶] All other burglaries are second degree. [¶] The People have the burden of proving beyond a reasonable doubt that the burglary was first degree burglary. If the People have not met this burden, you must find the defendant not guilty of first degree burglary."

Defendant disputes that there was sufficient evidence presented that the mobile home was inhabited. " '[I]nhabited' for purposes of section 460 'means currently being used for dwelling purposes, *whether occupied or not*.' [Citation.] . . . 'It has never been held that a person loses his residence by reason of a brief absence from the house where he lives, and without evidence of an intention to depart therefrom and go to live in some other place.' [Citation.] 'Numerous cases . . . have held that a residence is still "inhabited" for purposes of [section] 460 even though the residents of the house are temporarily away from the premises, where they have indicated no intention to stop living there.' [Citation.] . . . [A] house 'is "inhabited" if it is currently being used for residential purposes, even if it is temporarily unoccupied, i.e., no person is currently present. A formerly inhabited dwelling becomes uninhabited only when its occupants have moved out permanently and do not intend to return to continue or to resume using the structure as a dwelling.' " (*People v. Tessman* (2014) 223 Cal.App.4th 1293, 1299-1300.) Whether a dwelling is inhabited is a question of fact. (*People v. Burkett* (2013) 220 Cal.App.4th 572, 582.)

8

In *People v. Marquez* (1983) 143 Cal.App.3d 797, 801-802, the defendant entered the home of the victim through a window and took the victim's television and stereo. At the time of the burglary, the owner of the home had been moved into a boarding home and it was uncertain when she could return to her home. The home was maintained by a friend. The appellate court upheld the trial court's finding that the house was inhabited because the owner intended to return and there was no evidence that she vacated or abandoned the property. (*Id.* at pp. 799-802.)

In *People v. DeRouen* (1995) 38 Cal.App.4th 86, the defendant entered several vacation homes stealing various items from the homes. He was convicted of several counts of first degree burglary. (*Id.* at pp. 89-91.) On appeal, the defendant argued that the vacation homes were not inhabited because they were not the victims' primary living quarters. (*Id.* at pp. 90-91.) The appellate court noted that burglary laws are " 'based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence.' " (*Id.* at p. 91.) It found that, "the societal interests present in one's second or vacation home are equally as important as those present in one's primary residence. Each of the victims testified they resided in their [vacation] residences sporadically. The potential danger of an unexpected intruder into these dwellings, surprising the occupants and inciting violence is the same potential danger a burglar poses to occupants of their primary residence." (*Id.* at p. 92.)

9

Here, substantial evidence supported the jury's finding that the mobile home was inhabited. Medina stated that at the time they were storing their items in the house and were moving items to their other home in Rialto. They had not moved all of their belongings. Medina went to the mobile home three days each week to check on it and get the mail. Their belongings—including beds and dishes—were still in the home. The electricity and gas were still turned on. Medina stated that the floors had been damaged and needed to be fixed. Once they were fixed, his son would move back into the house. Medina and Moore were still inhabiting the house as they were gradually moving to Rialto. There was no evidence that they had abandoned or vacated the mobile home. (*People v. Marquez*, *supra*, 143 Cal.App.3d at pp. 801-802.) Further, their son was moving back into the house as soon as the floors were fixed. Substantial evidence supports the jury's finding of habitation.

Defendant contends that Medina was only using the house for storage. However, Medina still went to the location three times each week. Further, Medina testified they were gradually moving to Rialto and that they were waiting to repair the floors, which had been damaged by a pipe that burst, so Medina's son could move in. Medina insisted that his son was planning to occupy the mobile home. The evidence supported that Medina and Moore were still inhabiting the house and that once the floor was repaired, Medina's son would move back in.

Defendant also argues that the mobile home was not inhabited because she speculates there was no running water. She claims this is evidenced by the dishes still being in the sink and the toilets not being flushed. However, there was no testimony that

10

the water had been shut off. In fact, Medina testified that he had kept the utilities on, including electricity and trash service. Medina indicated the sink was full of dishes because his son had left the dishes and he refused to clean them for his son, not because the water had been turned off.

Finally, defendant contends the fact that the floors had not been fixed at the time of her entry was evidence that Medina viewed the house merely as a place to store his belongings and had no intention to return to inhabit the house. However, Medina testified that he planned to fix the floors so his son could move back in. Further, the utilities were kept on at the house. If Medina viewed the house only as a storage facility, there would have been no reason to keep electricity or trash service.

The evidence supports that Medina and his family only vacated the premises because the floors needed to be repaired. Medina was gradually moving items to their new home in Rialto and had not abandoned the mobile home. They had every intention of returning to inhabit the premises once the floors were fixed. Substantial evidence supports defendant's conviction of first degree burglary.[4]

B.      SECTION 667, SUBDIVISION (A) PRIOR CONVICTION

Defendant makes two alternative arguments regarding the section 667, subdivision (a)(1), serious prior conviction. First, defendant argues that if this court reduces her conviction in count 1 to second degree burglary, the section 667, subdivision (a)(1), prior

---

[4] Defendant has contended that if this court reduces her conviction in count 1 to second degree burglary, her conduct credits should be recalculated pursuant to section 4019 rather than under section 2933.1. Since we have upheld her first degree burglary conviction, we need not address this claim.

no longer applies. As stated *ante*, the first degree burglary conviction was supported by substantial evidence. As such, we need not strike the sentence imposed on the section 667, subdivision (a)(1), conviction on this ground. Defendant argues in the alternative that if this Court upholds her first degree burglary conviction in count 1, then the trial court abused its discretion by refusing to exercise its discretion to strike the prior conviction.

1. *ADDITIONAL FACTUAL HISTORY*

According to the probation report, defendant was 25 years old. On January 30, 2014, she was convicted of assault with a deadly weapon and was sentenced to 24 months in prison. At the same time she was convicted of receiving a stolen vehicle and was sentenced to 32 months in county jail. She violated her parole for this charge four separate times, including when she committed the instant offense. On November 29, 2018, she was convicted of grand theft, a misdemeanor, and was placed on probation. The aggravating factors included for the current crime were that it involved a threat of bodily harm, the manner in which the crime was committed was carried out with planning and sophistication, and it involved the taking of property of great monetary value. As for the aggravating factors for defendant, she was engaged in violent conduct that was a serious danger to society, the prior convictions were numerous and increasing in seriousness, she had served prior prison terms, she was on parole at the time of the offense and her prior performance on parole was unsatisfactory. There were no mitigating factors found by the probation department. It was recommended that she receive a sentence of 14 years four months.

Defendant filed a *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) motion to strike her prior conviction. She argued that her prior conviction was suffered just prior to her 18th birthday. Defendant also submitted a biopsychosocial report to be considered with the *Romero* motion. Defendant argued the trial court should consider her unstable childhood in ruling on the *Romero* motion. Defendant reported that her parents fought when she was young and that her father would whip her with a belt. Her parents divorced and she stayed with her mother until she was 12 years old. Her mother had mental health and substance abuse issues and could not care for her. She moved in with her father who physically abused her. She was placed in foster care at the age of 13. She claimed to have been sexually assaulted when she was 14 years old. She suffered from substance abuse, anxiety, depression, and paranoia. Defense counsel withdrew the *Romero* motion after meeting with the prosecutor and the trial court, and being advised as to the sentence that the trial court intended to impose.

At the sentencing hearing conducted on February 4, 2022, the trial court noted that Medina and Moore had indicated they wanted defendant to be punished but not "to the fullest extent of the law." The trial court stated on the record the aggravating factors included that defendant had a prior record, which indicated a pattern of regular and increasingly serious criminal conduct. She was on parole at the time she committed the instant offense and her prior performance on parole was unsatisfactory.

The trial court stated it had considered these factors when deciding whether to impose or strike the section 667, subdivision (a), prior conviction. The trial court stated it understood it had discretion to strike the prior but chose not to strike the prior conviction.

13

The trial court noted, "So the record is clear, the Court has read and considered the sentencing report. After a discussion with both parties, the Court agrees that nine years, eight months is an appropriate sentence in this case. [¶] The Court did exercise its discretion pursuant to 1385 with respect to the strike allegation in order to accomplish that nine years, eight months. [¶] The Court did not exercise, although the Court understands the Court has discretion under 1385, with respect to 667 (a)(1), a five-year enhancement."

2. *ANALYSIS*

"[S]ection 667, subdivision (a) requires a trial court to impose a five-year enhancement for each prior serious felony conviction." (*People v. Shaw* (2020) 56 Cal.App.5th 582, 585.) On September 30, 2018, the Governor signed Senate Bill No. 1393 which amended sections 667, subdivision (a), and 1385, subdivision (b) to allow a court to exercise its discretion to strike or dismiss a prior serious felony conviction for sentencing purposes. It was effective January 1, 2019. (Stats. 2018, ch. 1013, §§ 1-2.) The sentencing in this case was conducted in 2022, and the trial court stated that it understood it had the discretion to strike the serious prior felony conviction.

As noted in *People v. Shaw*, *supra*, 56 Cal.App.5th 582, there are "few published opinions following the enactment of Senate Bill 1393 that define the scope of a trial court's authority to strike a prior serious felony enhancement 'in the furtherance of justice' [citation], or discuss in any detail the standard of appellate review." (*Id.* at p. 585.) The court in *Shaw* first determined that a trial court, in determining whether to strike a prior serious felony conviction should look to the nature of the offense and the

14

background of the offender as it does in choosing whether to impose or strike other types of enhancements. (*Id.* at p. 587.) "No error occurs if the trial court evaluates all relevant circumstances to ensure that the punishment fits the offense and the offender." (*Ibid.*) Review of "a trial court's decision not to strike a prior serious felony enhancement [is under the] abuse of discretion [standard]." (*Id.* at p. 585.)

Here, the trial court considered striking the section 667, subdivision (a), enhancement despite defendant withdrawing her *Romero* motion. The trial court reviewed all of the aggravating and mitigating factors. It found that defendant had a prior record and had a pattern of increasingly serious felony convictions. Further, defendant had been on parole at the time that she committed the instant offense. The trial court also noted that defendant's prior performance on parole had been unsatisfactory. There were no mitigating factors. The trial court noted that it was aware it had the discretion to strike the prior serious felony conviction and that it had looked to all of the aggravating factors in determining whether to strike the prior conviction. The trial court did not abuse its discretion, after considering all of the relevant circumstances in deciding not to strike the section 667, subdivision (a), prior conviction.

C.    SENATE BILL NO. 567

Defendant contends that Senate Bill No. 567's (Stats. 2021, ch. 731, §§ 1.3, 4, 5.15)(SB 567) amendment to section 1170, subdivision (b), requires remand for resentencing in order for the trial court to reconsider his sentence under the new law. The People contend defendant forfeited his claim by failing to object to the imposition of the middle term at sentencing. We agree that defendant has forfeited her claim.

15

SB 567 amended section 1170, effective January 1, 2022, which was one month prior to defendant's sentencing. It provided several changes to the imposition of upper, middle and lower-term sentences. Section 1170, subdivision (b)(1) provides "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." Subdivision (b)(2) provides, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

Further, Section 1170, subdivision (b)(6) provides in pertinent part: "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." Section 1016.7, subdivision (b) provides that "A 'youth' for purposes of this section includes any person under 26 years of age on the date the offense was committed."

16

The ameliorative changes to section 1170 were in effect at the time of defendant's sentencing. Defense counsel and the prosecutor apparently spoke with the trial court about the appropriate sentence in chambers but the trial court did not place the discussion on the record. Defendant withdrew her *Romero* motion based on the indicated sentence discussed in chambers. Defendant was aware that the trial court intended to impose the middle term on count 1 but did not object on the record or ask the trial court to consider her age and childhood as a mitigating factor in imposing the middle term.

Defendant's failure to raise the applicability of SB 567 after the effective date of the amendment to section 1170 has forfeited the argument on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 351; *People v. Flowers* (2022) 81 Cal.App.5th 680, 683-684, review granted Oct. 12, 2022, S276237; but see *People v. Panozo* (2021) 59 Cal.App.5th 825, 840 [found no forfeiture in a case involving section 1170.91, which provides that the court shall consider any trauma suffered by the defendant as a member of the United States military as a factor in mitigation when imposing a sentence].)

Further, based on the silent record in this case, we must presume the trial court was aware of the change in the law and properly applied it to defendant's sentence. "[A] trial court is presumed to have been aware of and followed the applicable law." (*People v. Martinez* (1998) 65 Cal.App.4th 1511, 1517.) "These general rules concerning the presumption of regularity of judicial exercises of discretion apply to sentencing issues." (*People v. Mosley* (1997) 53 Cal.App.4th 489, 497, 499 [presumed on a silent record that the trial court was aware of its discretion to strike a prior conviction when sentencing occurred 53 days after the issuance of the *Romero* opinion].) We must presume the trial

court was aware of its discretion under section 1170, as amended, in imposing the middle term.

Even if defendant has not forfeited her claim, and we presume that the trial court was unaware of its discretion under revised section 1170, remand is unnecessary as the trial court would not have exercised its discretion to impose the low term. (*People v. Salazar* (2022) 80 Cal.App.5th 453, 463 [" '[T]he appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " citing to *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; see also *People v. Barber* (2020) 55 Cal.App.5th 787, 814 ["When a court is unaware of its discretion, the remedy is to remand for resentencing unless the record clearly indicates that the trial court would have reached the same conclusion if it had been aware of its discretion"].)

The trial court was well aware of defendant's childhood and age based on defendant's *Romero* motion to strike the prior serious felony conviction. Defendant chose to withdraw the *Romero* motion based on the sentence indicated by the trial court. All parties appeared to be satisfied that the sentence imposed was fair and just. There is nothing to support the trial court would have imposed the low term in this case based on defendant's childhood and age as it had already stated that the appropriate sentence in the case was nine years and eight months. The record clearly indicates that the trial court would conclude that imposing the lower term was contrary to the interests of justice. (§1170, subd. (b)(6).) "Remand for resentencing would be an idle act." (*People v. Salazar, supra,* 80 Cal.App.5th at p. 464, fn. omitted.)

18

## DISPOSITION

The judgment is affirmed in full.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
_____
J.

We concur:

RAMIREZ
_____
P. J.

McKINSTER
_____
J.